316 So.2d 463 (1975)
Sam CULOTTA
v.
POLICE JURY OF ASCENSION PARISH.
No. 10276.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
Rehearing Denied August 26, 1975.
Writ Refused October 17, 1975.
*464 Robert W. Williams, Baton Rouge, for appellant.
A. J. Kling, Jr., Gonzales, for appellee.
Before LANDRY, BLANCHE and YELVERTON, JJ.
BLANCHE, Judge.
Plaintiff-appellant, Sam Culotta, appeals an adverse judgment of the Twenty-third Judicial District Court which granted the peremptory exception of prescription of the defendant-appellee, the Ascension Parish Police Jury.
Plaintiff is the owner of 100 acres of land in Ascension Parish. On March 22, 1973, the plaintiff filed suit against the defendant, alleging that the defendant had entered his property surreptitiously and without the knowledge or consent of the plaintiff, and constructed a drainage canal diagonally across the rear of said property, causing damage in the amount of $53,700.
On April 26, 1973, the defendant filed a peremptory exception of prescription which was granted by the trial judge. The evidence at the trial indicated the canal was completed in September, 1963, and suit was not brought until approximately ten years later. The judgment granting the exception was handed down without reasons. Therefore, we reviewed the record in its entirety to determine whether or not the result reached by the trial judge was the correct one, Gauguin, Inc. v. Addison, 288 So.2d 893 (La.App. 1st Cir. 1973), writ refused, 293 So.2d 167 (La. 1974); Martin v. Farkas, 241 So.2d 272 (La.App. 1st Cir. 1970). We conclude that the defendant's peremptory exception of prescription was properly granted.
Plaintiff-appellant contends that prescription had not precluded him from bringing this action. On appeal he argues for the first time that Aleman v. Sewerage and Water Board of New Orleans, 196 La. 428, 199 So. 380 (1940), stands for the proposition that a suit brought under Article 1, Section 2, of the Louisiana Constitution of 1921, which provides that private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid, is not an action ex delicto, and, therefore, the one-year prescriptive period of Louisiana Civil Code, Article 3536[1] cannot apply. Plaintiff obviously asserts that the action is imprescriptible and argues that since the instant suit is one brought pursuant to Article 1, Section 2, the trial judge was in error by granting the exception of prescription.
Article 1, Section 2, is inapplicable in the instant case. The activities of the Police Jury did not amount to a "taking" *465 as required by the article. Private property is "taken" when the public authority "acquires the right of ownership or one of its recognized dismemberments," Columbia Gulf Transmission Company v. Hoyt, 252 La. 921, 215 So.2d 114 (1968), and authorities cited therein. The plaintiff has not set forth the right of ownership or dismemberment thereof which he alleges the Police Jury has taken from him, neither does the record indicate that the governmental agency has taken title to the area complained of or obtained even so much as a servitude across the plaintiff's land.
Additionally, the plaintiff's property was not "damaged" within the intendment of Article 1, Section 2. Property is considered "damaged" when the action of the public authority results in the diminution of the value of the property, Hoyt, supra. To the contrary, the value of the instant property was increased by the project. Mr. C. M. George, technical assistant to the New River Soil & Conservation District, which encompasses the subject property, testified that the plaintiff's land had become much more valuable as a direct result of the drainage project. The evidence established that the value of the land was enhanced in that the canal eliminated a low-lying area wherein water formerly stood.
Therefore, we conclude there was no taking or damage to the plaintiff's property which would invoke the operation of Article 1, Section 2.
In addition to the fact that there was no taking or damage of plaintiff's property, we also conclude that the plaintiff consented to the construction of the canal. He himself initiated the project as an improvement to the land, and his consideration therefor was the enhancement of the value of the property.
Prior to the construction of the drainage canal, the plaintiff entered into a farm district cooperative agreement with the New River Soil Conservation District for the purpose of obtaining assistance for the conservation of his land.
Mr. C. M. George testified that he was contacted by the plaintiff prior to the construction of the ditch concerning the possibilities of obtaining drainage for his land. In 1956, the plaintiff signed the agreement, authorizing the Soil Conservation Service[2] to provide technical assistance for soil and water conservation problems to him. The preliminary survey showed that other farms were draining through the plaintiff's farm and, therefore, the proper approach would be under a group plan. With this information, Mr. George asked the plaintiff about the possibility of his considering a group plan, and the plaintiff seemed willing to do so.
The Service then contacted two adjacent landowners, Mr. M. P. Evans and Mr. Bernie E. Hodgeson concerning a cooperative effort to drain all three tracts. An Application for Assistance on Group Facility was signed by Evans, Hodgeson and the plaintiff. As a result of this agreement, the U.S. Department of Agriculture Soil Conservation Service agreed with the plaintiff and the other landowners to make a feasibility study concerning a drainage project on the affected land. Mr. George obtained the signatures of both Evans and Hodgeson; however, the signature of the plaintiff was purportedly obtained by Mr. Emmett Combe, a deceased employee of the Service who did not testify at the trial.
The plaintiff, however, denied signing the Application and also denied that his *466 signature was the signature on the document. He avered that his first knowledge of the ditch was in May or June, 1972, when a bulldozer operator was hired to clear the back section of the property, and in doing so, the canal was exposed. The plaintiff asserted that in view of the thick underbrush, it was impossible to view the canal from the barn area in the front. However, to refute this contention, the defendant established that in the period of time prior to the construction of the canal, the plaintiff grazed cattle upon the land and the underbrush at the time the canal was constructed was not so thickly grown as it was at the time of the trial.
The plaintiff called an expert document examiner, Captain William J. Wisner, Jr., of the Louisiana State Police, to prove the signature on the Application for Assistance on Group Facility was not the plaintiff's. This attempt failed at the trial, however, when it was determined that Wisner would need extended study in order to ascertain the authenticity of the signature. The trial judge refused to grant a continuance to obtain Wisner's report and, therefore, the only evidence offered by the plaintiff to refute the authenticity of the signature was his own uncorroborated testimony.
After the results of the feasibility study were known, the consent of the landowners was necessary in order for the Police Jury to enter the land and actually construct the canal.
The evidence preponderates that the plaintiff gave his oral permission therefor.
Chester Diez, Sr., who at the time of the construction of the canal was Superintendent of Maintenance for the Ascension Parish Police Jury, testified that he could not remember who obtained permission from the plaintiff to go upon the property and construct the canal but he was sure that permission was obtained, as in every entry upon land, permission was always obtained. He recalled that construction was halted when Howard Blanchard, the dragline operator constructing the ditch, reached the plaintiff's property line because the plaintiff's approval had not been received at that time. After a couple of days, approval was obtained and construction continued. Diez was emphatic that the permission by the landowner was always granted before the Police Jury entered a tract of land but he could not remember the exact details in the instant case.
Marcus Boudreaux, also a member of the policethe Police Jury at the time of construction, testified that surely the order to construct the ditch would not have been handed down had not the permission of the landowner been granted. Leon S. Geismer, who was President of the Police Jury at the time of construction, testified that in every case the permission of the landowner is obtained before entry by the Police Jury to construct such canals. He asserted that such drainage projects were invariably welcomed by the farmers and usually only oral permission was required as the farmers ordinarily cooperated in every manner with the Police Jury.
Howard Blanchard testified that he was the dragline operator who constructed the drainage ditch in 1963. At that time he obtained permission from the plaintiff to go upon his property. However, he did not inform the plaintiff of the purposes of his entering the land. He was of the opinion that the plaintiff was aware that he was constructing the canal in view of the fact that the plaintiff visited the property on several occasions during the two-week construction period. Blanchard reached this conclusion based upon the fact that from the construction site he could see the plaintiff's automobile parked at the barn area, inferring that therefore the plaintiff could also see him.
The preponderance of the evidence in the case is that the plaintiff acquiesced in the entry upon his land and construction of the canal by the Police Jury in order that his land might be enhanced thereby. For this reason, there was no taking or damage *467 to the plaintiff's property within the meaning of Article 1, Section 2, of the Louisiana Constitution.
We conclude, therefore, that Article 1, Section 2 of the Louisiana Constitution has no application in the instant case.
We now consider the issue of prescription. The plaintiff has alleged in his petition that the defendant trespassed upon his land and that he should be compensated for the resulting damage. Paragraph 4 of the petition reads, in part, as follows:
". . . That such deliberate and hidden trespass changed the topography of petitioner's property."
Continuing in paragraph 6, the plaintiff alleges:
"That by such trespass plaintiff has suffered irreparable damage and defendant should be ordered to re-enter plaintiff's property and restore the surface thereof to the condition that existed prior to the complained of excavation."
As the plaintiff did not assert the foregoing constitutional argument on the trial of the matter, the trial judge concluded that the plaintiff's claim ex delicto for trespass had prescribed, obviously in view of the fact that suit was not brought until almost ten years after the alleged trespass.
Even though Article 3536 sets forth a one-year prescriptive period for actions in trespass, the plaintiff relies upon LSA-C.C. Art. 3537[3] which establishes that the prescriptive period of Article 3536 begins to run only after knowledge of the damage has been received by the property owner. In the instant case, the plaintiff avers that he did not gain such knowledge until June, 1972, and therefore the instant suit which was brought on March 22, 1973, was within one year and therefore timely filed. This argument is directed solely to the issue of damages, as clearly any action for trespass has prescribed under Article 3536.
We begin by noting that a landowner seeking recovery for damage to his property has the burden of proof on trial of a plea of one-year prescription to show when he obtained knowledge of the occurrence which gave rise to the damages. Coussons v. California Company, 201 So.2d 695 (La.App. 2nd Cir. 1967).
In light of our prior determination that the plaintiff consented to the construction of the canal across the rear of his property, the plaintiff cannot possibly carry the burden of proof required by Coussons. Assuming arguendo that his consent did not encompass the alleged resulting damages to his land, we, nevertheless, conclude that the plaintiff had knowledge of the construction prior to one year from the institution of the present suit, and, therefore, under Article 3537, his claim for damages to the land has prescribed.
We note, in addition to the foregoing, that actual knowledge of the damage is not required under Article 3537. In Cartwright v. Chrysler Corporation, 255 La. 598, 232 So.2d 285 (1970), the Supreme Court stated:
". . . [It] is not necessary that the party have actual knowledge of the conditions as long as there is `constructive notice.' Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription." (Cartwright v. Chrysler Corporation, 232 So.2d at 287) *468 From the totality of the evidence as described herein, we are of the opinion that the circumstances were such that even if the plaintiff had not actually consented to the construction of the canal, he as a reasonable owner would have been put on inquiry concerning the attempts to construct a drainage canal upon his property. Therefore, plaintiff had at least constructive notice if not actual notice of the alleged damage more than one year prior to the institution of the instant suit and therefore the instant suit was untimely.
For the reasons assigned herein, the judgment of the Twenty-third Judicial District Court which granted the peremptory exception of prescription of the defendant, Ascension Parish Police Jury, against the plaintiff, Sam Culotta, is hereby affirmed at appellant's cost.
Affirmed.
NOTES
[1] LSA-C.C. Art. 3536, in part, provides:

"The following actions are also prescribed by one year:
"That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses. . . ."
[2] The Soil Conservation Service is a subdivision of the local government but its advisors are employees of the Federal Government. Being a local agency, the Police Jury of the respective parishes provide the actual machinery and manpower for its projects, with technical help supplied by the Federal Government. Mr. George in this case was the technical adversor to the Service.
[3] Article 3537 of the Louisiana Civil Code provides:

". . . And where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof. (As amended by Acts 1902, No. 33)"