418 So.2d 531 (1982)
SOUTH CENTRAL BELL TELEPHONE COMPANY
v.
TEXACO, INC., et al.
No. 81-C-3285.
Supreme Court of Louisiana.
June 21, 1982.
Rehearings Denied September 3, 1982.
Breazeale, Sachse & Wilson, Victor A. Sachse, III, J. Wendell Clark, Baton Rouge, for applicant.
Robert E. Peyton, Christovich & Kearney, New Orleans, John Conery, Conery & Breaux, Franklin, Nicholas Gachassin, Jr., Gachassin & Capretz, Lafayette, David R. Dugas, Caffery, Oubre & Dugas, New Iberia, Dale H. Hayes, Morgan City, Phillip E. Henderson, Houma, for respondents.
WATSON, Justice.
South Central Bell Telephone Company brought this suit against Texaco, Inc., and other defendants[1] because gasoline damaged some of its underground cables in Morgan City, Louisiana. The trial court sustained exceptions of prescription and dismissed the suit. The Court of Appeal affirmed. 407 So.2d 430 (La.App. 1 Cir. 1981). A writ was granted to review the judgment. 410 So.2d 1131 (La., 1982).
The issue is when the last damage to the cables was apparent.

LAW
LSA-C.C. art. 3536 provides a one year prescriptive period for damages resulting from offenses or quasi-offenses and C.C. art. 3537 provides in pertinent part as follows:
"The prescription mentioned in the preceding article runs: ... from the day ... on which the injurious words, disturbance or damage were sustained.

*532 "And where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof."
Generally, the prescriptive period for damage to adjacent land commences when the damage becomes apparent and the injured party discovers who or what caused it. LSA-C.C. arts. 3537, 667; Dean v. Hercules, Incorporated, 328 So.2d 69 (La., 1976). However, Dean did not consider the question of "continuing damages". 328 So.2d at 73. See Di Carlo v. Landry & Dry Cleaning Service, 178 La. 676, 152 So. 327 (1934); Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816 (1947); Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (1968); and Wilson v. Hartzman, 373 So.2d 204 (4 Cir. La.App.1979) writ refused 376 So.2d 961 (La.). When the damaging conduct continues, prescription runs from the date of the last harmful act.

FACTS
The South Central Bell telephone cables which were damaged and eventually replaced run underground on the south side of Brashear Avenue in Morgan City, Louisiana. Cable conduit is approximately eighteen inches in diameter and has from six to twelve holes. Each cable has its own hole or duct run. In 1969, Bell employees became aware of gasoline in the manhole at the intersection of Brashear Avenue and Sixth Street.
Telephone cables remain operative after being saturated with gasoline for a long time. The gasoline does not damage the cable itself, but destroys the polyethylene sheath which protects the cable from water damage. The polyethylene sheath softens, expands, and finally completely deteriorates under the action of petroleum products. The polyethylene will sustain gasoline damage for a period of time before it breaks down. Without exposure to gasoline, the polyethylene cable will last for forty or more years.
Brashear Avenue or Highway 90 runs roughly east and west and Sixth Street runs roughly north and south. Billups is on the northwest corner and Dragna's Shell Station is on the northeast corner of the intersection. Lucien's Texaco Station is on the southeast corner and is on the same side of the avenue as the Bell cables. The conduit runs under that station. Because of the proximity of the Texaco station, that station was first pinpointed as the source of the gasoline in the manhole. The station's tanks are owned and maintained by Texaco. The operator at the Texaco station admitted that he was losing a lot of gasoline and the Texaco tanks were replaced in January of 1971. Between 1971 and 1976, Lucien's Texaco had no problems with gasoline leakage. After the Texaco tanks were replaced, it was believed that the gasoline was draining from the shell underneath Brashear Avenue and the problem would subside when all the gasoline had been drained.
There continued to be gasoline in three of Bell's manholes, one at Sixth and Brashear, one at Federal and Brashear, and another inbetween. In 1974, the damage reached a peak. The manhole at Sixth and Brashear was pumped out once a month. On October 7, 1974, Leonard Chauvin, construction manager of South Central Bell, made an inspection of that manhole with the fire marshal's office. The company was trying to detect the source of the gasoline and prevent continuation of the damage. The gasoline presented a hazard to Bell's employees as well as its cables. The crime lab reported on August 27, 1975, that the gasoline in the drainage system was similar to Shell super regular. Suit was filed on October 16, 1975.
The Bell system continued to function, although some cables had to be spliced and repaired. The problem fluctuated with the weather and was worse after heavy rains. According to Ellis Trosclair, in charge of cable repair, "the gasoline never did put the cable out completely." (Depo., p. 70)
Gilbert Hicks, a contract supervisor for Bell, found an abandoned storm drain or catch basin running under the street into the manhole. From the angle of the drain, Hicks felt that there was a strong possibility that the gasoline was coming from the *533 Shell station on the other side of the street. Test holes were drilled on November 7, 1975, which showed a hundred percent gasoline reading on the side of the road where Dragna's Shell station is located.
Shell changed out three of its old tanks with new tanks in December of 1975. According to Gerald A. Price, now chief of the Morgan City Fire Department, two of the old Shell tanks "leaked pretty good and the third one had a couple of leaks". (Depo., p. 27) After the Shell tanks were replaced, the problem subsided.
The trial court relied on the testimony of Herbert Stanislaus Leitz, who was in charge of the Morgan City office of South Central Bell from September 1, 1974 through February 16, 1977. Leitz's said: "Well, I knew we had trouble in September of '74. I did not derive that we had to replace every cable in there in September of '74." (Depo., p. 9) According to Leitz, Bell would "[E]ventually" have to replace all the cable but "[N]ot then". (Depo., p. 9) The damage was scattered and the sheaths on some of the cables were worse than others. Some time in the latter part of 1974 or 1975, Leitz decided that all of the cables should be replaced, "even the ones that weren't giving us trouble yet. I could see that they were going to give us trouble." (Depo., p. 24) Leitz said that "the damage" to the cables occurred before he got to Morgan City, but it is clear that the damage continued after that date. (Depo., p. 44) South Central Bell continued to pump gasoline out of the manhole at Sixth and Brashear. On November 14, 1975, four or five hundred gallons were removed from that manhole. Because of the continued presence of the gasoline, Bell was forced to use specially manufactured lead sheathed cable in the area. Replacement of the cables was not completed until October 8, 1976.

CONCLUSION
The trial court acknowledged that the tort was a continuing one but found that the final damage was done to the Bell telephone cables in September of 1974; that the damage "was consummated" at that time. (Tr. 365) There was substantial damage to the cables as early as September of 1974 but the trial court was clearly wrong in finding the damage completed at that time. Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978), on remand 370 So.2d 1262 (La. App. 3 Cir. 1979), writ denied 374 So.2d 660 (La., 1979). The cables remained usable until their replacement with lead sheathed cable after suit was filed.
In September of 1974, some of the cable was not giving any trouble and the system was functioning. Leitz decided that the cable had to be replaced because of the gasoline in the manhole, but the damage to the cable continued. While the cables were operative, they were clearly susceptible to further damage. The trial court erred in finding that no further damage was done because Southern Bell had made a business decision to replace its cable. The cable continued to be damaged and the manholes remained dangerous until the Shell tanks were replaced in December of 1975. There were no more complaints after that date and prescription on that cause of action runs from December, 1975.
The suit, filed October 16, 1975, is timely as to the Shell defendants. The suit has prescribed as to the Texaco defendants, since the Texaco tanks were replaced in 1971 and there is no indication of leakage thereafter.
When the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated. The damage did not end merely because South Central Bell decided that all of its cables would eventually have to be replaced. Where the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage.
For the foregoing reasons, the judgment of the trial court on the exceptions of prescription is affirmed as to Texaco, Inc., Lucien Cutrera, Sam Siracusa and Joseph Siracusa. The judgment of the trial court *534 on the exceptions of prescription as to Matile Dragna, Mrs. Mary Dragna, and McKerall Oil Company, Inc., is reversed, and the matter is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] Remaining as defendants in addition to Texaco, Inc. are Sam Siracusa, Joseph Siracusa, and Lucien Cutrera (the Texaco defendants); McKerall Oil Company, Inc., the Shell distributor in Morgan City, Matile Dragna and Mrs. Mary Dragna (the Shell defendants).