528 So.2d 1084 (1988)
Dolores Hackett LEWIS, et al, Plaintiffs-Appellants,
v.
SOHIO PETROLEUM CO. and Sun Exploration & Production Co., Defendants-Appellees.
No. 87-631.
Court of Appeal of Louisiana, Third Circuit.
July 6, 1988.
*1085 Carmouche, Gray & Hoffman, Van M. Davidson, Jr./Anna Gray, Lake Charles, for plaintiffs-appellants.
Broadhurst, Brook, Mangham & Hardy, (Stephen D. Baker) Lafayette, Breazeale, Sachse & Wilson (Frank S. Craig, III,) Baton Rouge, Scofield, Bergstedt, Gerard, Mount & Vernon, P.C., (John R. Pohorelsky), Lake Charles, for defendants-appellees.
Before FORET, YELVERTON and KNOLL, JJ.
FORET, Judge.
This case involves a suit brought by the heirs of Benjamin Rutherford (Rutherford), regarding the alleged breach of two servitude agreements granted by Rutherford to Sohio Petroleum Company (Sohio) and Sun Exploration & Production Company in 1950.
Plaintiffs, as owners of an undivided 15/16th interest in property located on Hog Bayou in southern Cameron Parish, Louisiana, filed suit against Sohio in August of 1985.[1] Plaintiffs' petition alleges that defendants have breached the servitude agreements granted in 1950 in their favor by allowing the canals constructed pursuant to the servitudes to exceed the contractually allowed width of 65 feet. Plaintiffs further allege that this breach of contract *1086 is the cause of severe surface and ecological damages to their property due to the erosion of the canals.[2]
Sohio filed a motion for summary judgment based on a plea of prescription, which was granted by the trial court, dismissing plaintiffs' suit. Plaintiffs appeal, urging four assignments of error. We affirm.

FACTS
Defendants, Sohio and Sun Exploration, acquired a servitude for the construction, maintenance, operation, and use of oilfield navigational canals over parts of the plaintiffs' marshland located on Hog Bayou from Benjamin F. Rutherford by instruments dated July 3, 1950 and October 16, 1950. The agreements stated, in pertinent part:
"The servitude herein granted is for the construction, maintenance, operation and use of a canal for navigation purposes and in connection with the exploration and development of the above described lands and other lands in the area for oil, gas and other minerals. Said canal.....
Shall be constructed or dredged within retaining banks and shall be not more than sixty-five feet wide. Because of the low elevation of the above described land, the parties recognize that the dredge spoil from the canals to be dredged will be in more or less liquid form and may, therefore, spread out over Grantor's land beyond said canal-retaining banks." In accordance with the agreements, Sohio and Sun dredged an oilfield canal in the early `50's.
Benjamin Rutherford owned this property until his death in Hurricane Audrey in 1957. Rutherford was survived by six children and the heirs of two others. Plaintiffs herein are the owners of a 15/16th interest, in indivision, of the property on which the servitudes are granted.

ISSUES
Plaintiffs urge the following assignments of error:
(1) As a matter of law, the Trial Court erred as Summary Judgment is not appropriate in those instances where a judicial determination of subjective facts concerning plaintiff's knowledge of the defendant's breach of an obligation is an issue for judicial determination.
(2) Assuming arguendo that the plaintiffs' subjective knowledge could be determined by Summary Judgment, the Trial Court erred as a matter of law in granting Summary Judgment as the defendants failed to meet their burden of proof to establish by clear and convincing evidence that the claims of the plaintiffs had prescribed.
(3) As a matter of law, the Trial Court erred as the damages growing out of the defendant's failure to maintain canal banks are continuing and consequently prescription has not began to run against the plaintiff's claims.
(4) As a matter of law, the Trial Court erred in refusing to consider the opposing affidavits of the plaintiffs which were circulated one day later than the pre-trial order required and were nonetheless circulated and timely filed in accordance with La.Code Civ.Proc. Art. 966 one day prior to the hearing on the Motion for Summary Judgment.

ASSIGNMENTS OF ERROR NOS. 1 & 2
The petition of plaintiffs claims that defendants breached a contract which was entered into in 1950, thirty-five years prior to the filing of the petition. An action for breach of contract is subject to a liberative prescription of ten years. La.C.C. art. 3499. The issue before us, in deciding whether plaintiffs' claim has prescribed, is to determine when this alleged breach occurred, which event would begin the running of prescription. "Although the objection *1087 of prescription is usually raised by peremptory exception, it may be raised by summary judgment." Bankston v. B & H Air Tools, Inc., 486 So.2d 199 (La.App. 1 Cir.1986), writ denied, 488 So.2d 1021 (La. 1986); Bouillion v. Sam Broussard Trucking Co., Inc., 525 So.2d 628 (La.App. 3 Cir.1988).
Defendants, in support of the motion for summary judgment, submitted the affidavit of Cary W. Kerlin, a former employee of the U.S. Department of Agriculture & U.S. Fish & Wildlife Service trained extensively in aerial photographic interpretation. His affidavit clearly shows that the width of the canal had exceeded the permitted 65 feet by an additional 4 feet by 1953 and by an additional 30 feet by 1957, the year in which Benjamin Rutherford died in Hurricane Audrey. Therefore, the alleged breach, if any,[3] of the servitude agreements occurred prior to 1953 and was very apparent by 1957. Insofar as plaintiffs do not dispute these facts, Kerlin's affidavit clearly disposes of any material issue of fact as to when the alleged breach occurred.
If, as plaintiffs contend, a question of fact remains as to knowledge, it would not be the plaintiffs' knowledge or lack of knowledge which would be material. Instead, the issue would be whether Benjamin Rutherford had knowledge or should have known of the alleged breach. We find that Benjamin Rutherford knew or should have known of the alleged breach of the servitude agreement prior to his death in 1957. Thus, plaintiffs' knowledge or lack of knowledge is no longer an issue in determining the correctness of defendants' motion for summary judgment.
Plaintiffs also contend that the trial court erred in granting summary judgment because the defendants failed to prove that plaintiffs' claims were prescribed by clear and convincing evidence.
The Louisiana Supreme Court discussed a movant's burden of proof on an exception of prescription as follows:
"All that must be considered in the peremptory exception of prescription is whether there is sufficient evidence to show that the alleged time period has run under the requirements of the particular code articles involved."

Montgomery v. Breaux, 297 So.2d 185, 187 (La.1974), appeal after remand, 338 So.2d 314 (La.App. 3 Cir.1976), application denied, 341 So.2d 410 (La.1977).
Upon the filing of a motion for summary judgment, it is well recognized that the burden rests upon the party moving for summary judgment to show convincingly that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law.
Once the movant in a motion for summary judgment has carried its burden, the burden is shifted to the opposing party to counteract movant's proof. La.C.C.P. art. 967 details the burden of a party opposing a motion for summary judgment, in pertinent part, as follows:

. . . .
"When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him."
In this case, plaintiffs have chosen to pursue an action for breach of contract. "Liberative prescription commences from the date of an obligor's breach of his obligation." Loewer v. Texas Gas Transmission Co., 615 F.Supp. 1, 2 (W.D.La. 1984). See also, Motorola, Inc. v. Standard Materials, Inc., 337 So.2d 1214 (La. App. 1 Cir.1976) (cause of action arose when goods entrusted were not returned per agreement); Deshotels v. Fruge, 364 So.2d 258 (La.App. 3 Cir.1978), writ denied, 367 So.2d 388 (La.1979) (prescription period of ten years began running when alleged breach occurred); Cyr v. Louisiana Intrastate *1088 Gas Corp., 273 So.2d 694 (La.App. 1 Cir.1973), (plaintiff had a period of ten years from time of breach to seek rescission or to require specific performance of the contract provision).
The undisputed evidence submitted by Sohio clearly and convincingly shows that Sohio breached the contract, if there was in fact a breach, by 1953.
Plaintiffs argue that the doctrine of contra non valentum suspended the running of prescription alleging that there is no direct evidence that any of the plaintiffs had knowledge of the existence of the obligations that had been breached. This doctrine was recently explained by the Second Circuit in Matthews v. Sun Exploration & Production, 521 So.2d 1192, 1197-1198 (La. App. 2 Cir.1988), as follows:
"The Louisiana Supreme Court discussed the doctrine of `contra non valentum' in the recent case of Plaquemines Parish Commission Counsil v. Delta Development Company, Inc., 502 So.2d 1034 (La.1987). In the early jurisprudence, the courts held that the doctrine applied to prevent the running of liberative prescription in three factual situations. They were: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. A fourth situation where `contra non valentum' applies to prevent the running of prescription has been recognized in modern jurisprudence. This situation occurs where the cause of action is not known or reasonably knowable by the plaintiff, even though the plaintiff's ignorance is not induced by the defendant. However, the plaintiff's claim is not excepted from the running of prescription if his ignorance is attributable to his own willfulness or neglect. The plaintiff will be deemed to know that which he could have learned by reasonable diligence. Corsey v. State Department of Corrections, 375 So.2d 1319 (La.1979).
"In the first three fact situations referred to above, a plaintiff's cause of action has accrued, but the plaintiff is prevented from enforcing it by some reason external to his own willsuch as the conduct of the defendant. In the fourth situation, the cause of action does not mature until it is known or is at least knowable. The equitable nature of the circumstances in each case determines whether `contra non valentum' is applicable. Nathan v. Carter, 372 So.2d 560 (La.1979)."
Spyker v. International Paper, 173 La. 580, 138 So. 109 (1931) and Poirier v. Burton-Swartz Cypress Co., 127 La. 936, 54 So. 292 (1911), involved claims for damages to land prescribed by one year. The Louisiana Supreme Court held in both cases that the burden was on the party against whom prescription was pled to show when they gained knowledge of the occurrence which gave rise to their damages. See also, Culotta v. Police Jury of Ascension Parish, 316 So.2d 463 (La.App. 1 Cir.1975), writ refused, 320 So.2d 561 (La.1975); Mayer v. Ford, 12 So.2d 618 (La.App. 1 Cir.1943). Plaintiffs filed no timely response to Sohio's motion for summary judgment and, as such, any issue as to knowledge or lack of knowledge is not properly before us.
Assuming arguendo that it was necessary for Sohio to show that there existed no genuine issue of material fact as to plaintiffs' knowledge or lack of knowledge, we hold that the trial court was correct in finding that the evidence was clear that both plaintiffs and their ancestor in title, Rutherford, were actually or constructively aware that the canal right-of-way had widened beyond the permitted 65 feet some thirty years before suit was filed.
The depositions of some of the plaintiffs themselves, submitted by Sohio in support of its motion for summary judgment, show that Rutherford operated a hunting club in the area of the Sohio right-of-way from the early '40's until the time of his death in 1957. He spent time in the Hog Bayou *1089 area and in the canal itself. Wayland Welch, grandson of Rutherford, stated that he went to the canals with his grandfather in the early '50's. Dean Arthur Roome stated in his deposition that, before Hurricane Audrey in 1957, he would go with his grandfather, Rutherford, daily in the old pickup and check the windmill and the levees.
In addition to running the hunting club, Rutherford worked cattle and rode horses until he was 81 years old or until about 1954. He was the sole owner of the surface of the Rutherford Estate. The depositions of plaintiffs reveal that Rutherford "ran his own show," was in charge of managing his property, and was active until he died in 1957 at the age of 84.
Although Rutherford "ran the show," he frequently discussed day-to-day operations with his son Joe, the family member most often present on the Rutherford property. As will be shown, Joe Rutherford also had knowledge of the alleged breach.
Joe Rutherford, Rutherford's youngest son, ran the hunting club with Rutherford in the early '50's. After Rutherford's death in 1957, Joe continued to operate the hunting club in the Hog Bayou area until approximately 1965; he built duck blinds at Hog Bayou, did earth work in various ponds, and dug "trenasses" for access from the banks to the ponds. Certain water control improvements were also constructed by Joe during this time period in connection with the hunting club, including weir-type structures built to facilitate the retention of fresh water in the ponds in the area of the Sohio canal system.
Ben Garber, Rutherford's grandson, testified that his Uncle Joe used to talk to the Sohio-Sun representatives in an attempt to persuade Sohio-Sun to fix the levees and maintain the canals. Garber also testified by deposition that during the mid-50's, while Rutherford was still alive, Joe Rutherford and others would go into Hog Bayou several days each year with shovels and try to plug up "the little washed out places" so that fresh water would stay inside the ponds. Garber's testimony continued by stating that after Joe would have these unsuccessful discussions with the local Sohio-Sun representatives, he would perform the maintenance on the canal himself as best he could.
Joe Rutherford was also the family member who took charge of discussions with Sohio and other oil company operators regarding cattle walks which were needed across pipelines in the Sohio canal. Basically, "Uncle Joe" handled the family business in relation to the oil companies. When a new oil and gas lease or right-of-way needed to be signed by family members, Joe would accompany the oil company representatives and get signatures from family members.
Joe Rutherford, representing the family members in connection with the various oil operators, was clearly aware of the alleged breach by Sohio no later than 1965. His knowledge, as agent for the other family members, must be imputed to these other family members. See, Mayer v. Ford, supra, (A principal is affected with "constructive knowledge", regardless of his actual knowledge, of all material facts of which his agent receives notice or acquires knowledge.); Spyker v. International Paper Co., supra, (Children inheriting land from father were bound by knowledge another child has as their agent.); Martin v. Esponge, 388 So.2d 128 (La.App. 1 Cir.1980), writ denied, 393 So.2d 743 (La.1980) (Co-owners acted as agent for other co-owners).
In determining that the doctrine of contra non valentum is not applicable, we find no act was committed by the defendants which prevented Rutherford or the plaintiffs from availing themselves of their cause of action, nor do we find that the cause of action could not have been discovered by Rutherford or his heirs through the exercise of reasonable diligence. We agree with the trial court's finding that plaintiffs' cause of action for breach of contract had prescribed as early as 1963 due to the actual knowledge of Rutherford, which was imputed to his heirs.

ASSIGNMENT OF ERROR NO. 3
Plaintiffs contend that the trial court erred in finding their claim was prescribed *1090 because the damages growing out of the defendants' failure to maintain the canal banks are continuing and consequently, prescription has not begun to run against the plaintiffs' claims. Plaintiffs rely upon the Louisiana Supreme Court's decision in South Central Bell v. Texaco, Inc., 418 So.2d 531 (La.1982). South Central Bell states, at page 533:
"When the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated." (Emphasis added)
The distinction between delictual fault and contractual fault is set forth in Planiol's discussion of the French Civil Code:
"`An idea which has reigned sovereignly in all the French doctrine for more than fifty years is the distinction between delictual fault and contractual fault * * *. What does one understand from such words? Contractual fault is that which is committed on the occasion of the execution [inexecution] of a contract. It consists in violating a contractual obligation. As to the delictual fault, most authors say that it is "an act productive of obligations which takes place between persons juridically strangers to each other." Thus an essential difference separates these two kinds of fault: the contractual fault supposes the pre-existence of an obligation which is the inexecution thereof, while delictual fault supposes the absence of the obligation, and its result is the creation of one.' Planiol, Traité élémentaire de droit civil, 11th ed. 1939 (La.State Law Institute tr. 1959), Vol. 2, pt. 1, § 873, p. 485.3"
Reserve Insurance Co. v. Fabre, 243 La. 982, 149 So.2d 413, 416 (1963), U.S. cert. denied, 375 U.S. 816, 84 S.Ct. 49, 11 L.Ed. 2d 51 (1963). (Emphasis added)
In this case, prescription began to run on plaintiffs' cause of action when the canal exceeded its permitted width of 65 feet and/or when Sohio initially failed to maintain the canal at 65 feet. Plaintiffs argue that there is no reason to draw a distinction between actions in contract or tort because the obligation under both theories is to remedy the breach of the obligation. We disagree.
South Central Bell, supra, involved an action in tort and is not applicable to the action before us. Plaintiffs have cited no authority, either statutory or jurisprudential, nor do we find any authority to support the proposition that the "continuing tort" theory set forth in South Central Bell should be applied to an action for breach of contract. As such, we find this assignment of error without merit.

ASSIGNMENT OF ERROR NO. 4
Plaintiffs contend that the trial court erred in not considering the opposing affidavits which were circulated one day later than the pre-trial order but nonetheless in accordance with La.C.C.P. art. 966.
A pre-trial order was entered prior to the March 9th hearing wherein the trial court ordered that all countervailing affidavits be circulated no later than March 5, 1987. Contrary to the pre-trial order, the affidavits of plaintiffs were not circulated until March 6 and, as such, were disallowed by the trial court as untimely.
The counteraffidavits of plaintiffs, disallowed by the trial court, alleged that the plaintiffs "had no direct personal knowledge that any portion of the canals had been dredged, swept or eroded beyond the contractually required width of sixty-five feet" prior to either October of 1982 or May of 1985.
We find plaintiffs' argument unpersuasive primarily because we do not find that the counteraffidavits (which we have examined in the interest of justice), even if timely circulated, would have raised a genuine issue of material fact on Sohio's motion for summary judgment. As stated earlier, insofar as we find that Rutherford himself was aware or should have been aware of the alleged breach of the servitude agreements, the facts set forth in plaintiffs' affidavits regarding their knowledge or lack of knowledge are irrelevant.
Assuming arguendo that plaintiffs' knowledge was a relevant issue in determining the propriety of granting Sohio's *1091 motion for summary judgment, the content of the counteraffidavits does not state affirmatively that the plaintiffs had no knowledge that the canal was widening nor do the affidavits state any reason why plaintiffs would or should not have been aware of the very apparent change in their property. Taken at face value, the affidavits merely stand for the proposition that plaintiffs may not have been aware of the right-of-way contractual terms to which they were a party. This certainly would not have been a defense to an exception of prescription.
The pre-trial order of February 20 was rendered after consideration by all of the parties and the court. We do not find that the trial court abused its discretion in adhering to its pre-trial order.[4]

CONCLUSION
Based upon the foregoing, the judgment of the trial court granting Sohio's motion for summary judgment is hereby affirmed.
Costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Plaintiffs are Dolores Hackett Lewis, Walter F. Roome, Clarence B. Hackett, Benjamin A. Garber, Edith Rutherford Garber, Dean A. Roome, and Eleanor Rutherford West, as co-trustees of the Rutherford Estate Trust and as co-trustees of the Edward B. Rutherford Intervivos Trust, Robert L. Rutherford as a co-trustee of the Edward B. Rutherford Intervivos Trust, Curtis Welch and Wayland Welch, John W. Rutherford, Jr., Carol Fannell Rutherford Smith, and Jimmie Ann Rutherford Moriarity.
[2] Plaintiffs additionally alleged that this purported breach of contract constituted an unfair trade practice and sought remedy under the Louisiana Unfair Trade Practices Act. This claim is not before us on appeal insofar as the trial court specifically excluded this claim from the summary judgment in favor of Sohio.
[3] Sohio denies that any breach of contract occurred at all; but, assuming arguendo that a breach did occur, plaintiffs' action for damages as a result of the breach is prescribed.
[4] Compare, Bouillion v. Sam Broussard Trucking Co., Inc., supra.