GONZALES, Judge.
Sherry Manchester Crockett brought an intentional interference action in the 32nd Judicial District Court, Parish of Terre-bonne, against Emmett Eugene Crockett, *1231 Jr., her former spouse and against her former spouse’s attorneys, Caren Morgan, Kerry Kissel and the partnership of Morgan and Kissel, for damages for allegedly being deprived of her child for twenty-seven days in part due to the advice which Mr. Crockett received from Caren Morgan and Kerry Kissel in a child custody dispute between Mrs. Crockett and Mr. Crockett.
PROCEDURAL HISTORY
Morgan and Kissel filed declinatory exceptions raising, the objections of improper venue and insufficiency of service of process, and peremptory exceptions raising the objections of no cause of action and no right of action. The judge overruled the exceptions and the defendants applied for writs to this Court. This Court granted writs and in the case at 537 So.2d 334 found in part:
The competent evidence of record and the pleadings are ambivalent about whether or not wrongful conduct occurred and/or damages were sustained in Terrebonne Parish during the alleged continuous tort. In the interest of justice, we will remand the case to the trial court for a full evidentiary hearing on those issues. On remand, the burden of proof shall be on Mrs. Crockett.[1]
This Court also found:
Because the objection of improper venue raised in a declinatory exception declines the jurisdiction of the trial court since the action has not been filed in the correct parish, we question our authority to rule on the objection of no cause of action until we have resolved the venue objection adversely to the relators ... For these reasons, we decline to act at this time on the objection of no cause of action, reserving to the relators the right to reassert an assignment of error thereto in an appeal from a subsequent adverse ruling in the trial court on the retrial of the objection of venue, (emphasis original)
On rehearing after remand, the Thirty-Second Judicial District Court in Terre-bonne Parish, Judge Baron B. Bourg presiding, again overruled the declinatory exception raising the objection of improper venue, and in its written reasons stated in part:
The original custody battle was properly filed in Terrebonne Parish. It is the violation of a valid Terrebonne Parish Order and Mr. Crockett’s and Morgan & Kissel’s attempt to venue shop his custody battle which caused the damages allegedly sustained. Mrs. Crockett was in Terrebonne Parish while attempting the return of her son, which was the time she suffered her mental pain and anguish. La.C.C.P., Article 74 provides that an action may be brought in the parish where the wrongful conduct occurred or the parish where the damages were sustained. This cause stems from an action initially taken in Terrebonne Parish. The wrongful conduct occurred when Mr. Crockett and Morgan & Kissel violated the Terrebonne Parish Order, causing anguish to Plaintiff in Terre-bonne Parish. For these reasons the Exception of Improper Venue is overruled. This matter may proceed in the 32nd Judicial District Court, Terrebonne Parish.
In the appeal sub judice, the only assignment of error raised by the appellants, Morgan and Kissel, is that the district court erred in overruling Morgan and Kissel’s declinatory exception raising the objection of improper venue. Therefore, that is the only issue before us. See Uniform Rules of Louisiana Courts of Appeal, 1-3.[2]
Attorneys for Mr. Crockett in the Jefferson Parish proceedings were Caren M. Morgan and Kerry A. Kissel, which partnership and its individual members are alleged to be domiciled in Jefferson Parish. This Court previously found that Mr. Crockett was domiciled in Jefferson Parish for purposes of venue at the time this suit was *1232 filed. Therefore, this Court found that Mrs. Crockett must rely upon La.C.C.P. art. 74 to establish venue in Terrebonne Parish. In remanding this case to the trial court for a full evidentiary hearing on the venue issue, this Court placed the burden of proof on Mrs. Crockett.[3]
Mrs. Crockett argues the original venue was Terrebonne Parish, the damages were sustained in Terrebonne Parish, and the wrongful conduct complained of occurred predominately in Terrebonne Parish during the continuous tort and thus Terrebonne Parish is the proper venue in which to proceed. Morgan and Kissel argue under La.C.C.P. art. 74 venue is proper where the wrongful act occurred or where the damage was sustained and because Morgan and Kissel were in Jefferson Parish when they made the decision to disobey the Ter-rebonne Parish Court order, this established Jefferson Parish as the proper venue.
FACTS
In September of 1986 the trial court in Terrebonne Parish rendered judgment awarding custody to both parties jointly, designating Mrs. Crockett as the primary custodian and awarding Mr. Crockett visitation rights pursuant to a joint custody plan. Mr. Crockett filed a rule seeking to implement the joint custody plan on November 6, 1986. On November 14, 1986, Mrs. Crockett, who was then unemployed, moved from Louisiana to her home state of Massachusetts to seek employment, after notifying Mr. Crockett and the court in writing. On November 17, 1986, Mr. Crockett filed a rule for contempt of court based upon Mrs. Crockett’s alleged “deliberate attempt to alienate and estrange” him from the minor child. Terrebonne Parish District Judge Edward J. Gaidry ordered the parties to abide by and follow for the time being the proposed Joint Custody Plan, pending submission of a final consent plan. Pursuant to the court’s order of December 31, 1986, Mrs. Crockett surrendered the child to Mr. Crockett on January 2, 1987, with the understanding that the child would be returned to her on January 23, 1987, in accordance with the proposed custody plan.
However, on January 21, 1987, Mr. Crockett filed a petition for a change of custody in Jefferson Parish alleging that he was a resident of that parish. The Jefferson Parish trial court, by ex parte order, ordered that the child remain in Jefferson Parish pending a hearing on the custody petition. Mr. Crockett failed to return the child to Mrs. Crockett on January 23, 1987, in violation of the Terrebonne Parish court ordered visitation plan. Mrs. Crockett filed a rule for contempt of court, or alternatively, to enforce the existing visitation schedule in Terrebonne Parish. The child remained in Mr. Crockett’s custody in Jefferson Parish until April 7, 1987, when it was ordered by Judge Gaidry in Terre-bonne Parish that the child be returned to the custody of Mrs. Crockett. Mr. Crockett was found in contempt of the Terre-bonne Parish court order for refusing to return the child to his mother in Massachusetts, and was sentenced to thirty days in the Terrebonne Parish jail.[4]
On February 18,1987 Mrs. Crockett filed a petition for change of custody. After hearing, the trial court terminated the joint custody arrangement and granted Mrs. Crockett sole custody. That judgment was appealed to this Court and was affirmed. That decision is set forth in Crockett v. Crockett, 525 So.2d 304 (La.App. 1st Cir.), writ denied, 532 So.2d 117 (La.1988).
OBJECTION OF IMPROPER VENUE
Louisiana Code of Civil Procedure article 74 provides:
An action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained. An *1233 action to enjoin the commission of an offense or quasi offense may be brought in the parish where the wrongful conduct occurred or may occur.
As used herein, the words “offense or quasi offense” include a nuisance and a violation of Article 667 of the Civil Code.
Mrs. Crockett testified at length at the rehearing. She testified that she suffered mental pain, anguish, embarrassment and humiliation during the seventy-seven days between the time Jason was supposed to be returned to her under the joint custody plan and the time he was actually returned to her. She testified that between January 23, 1987, the date Jason was supposed to be returned to her under the joint custody plan, and April 7, 1987, the date the child was actually returned to her in Terrebonne Parish, she was in Terrebonne Parish from February 5 to February 8 and from March 4 to April 11 (except for one day that she flew back to Massachusetts during that period) while attempting to have the child returned to her.
During that time period, Mrs. Crockett spent a typical day driving from Terre-bonne Parish to Jefferson Parish to see her son at the day care center, staying for about an hour and a half until being told to leave by the day care supervisors.[5]
The workers at the day care center were instructed by Mr. Crockett not to speak to Mrs. Crockett and not to give her any information about her son. After leaving the day care center, Mrs. Crockett would drive back to her attorney’s office in Terre-bonne Parish to discuss the progress of the case. When Mrs. Crockett called her husband’s family business, both at the office in Houma and at the office in New Orleans, and when she called Mr. Crockett’s home and his parents’ home, employees of her husband’s family refused to give her any information about her son or to even speak to her or let her speak to her son under orders from the Crockett family. Mrs. Crockett did not know where Jason, who was two years old at the time, was when he was not at the day care center, nor did she know who was taking care of him.
Mrs. Crockett testified that Jason was moved around during this time period, from his father’s house to his grandparents’ house at different time periods, apparently in order to prevent Mrs. Crockett from trying to contact her son. Mrs. Crockett testified that her emotional state during this period was “like I was psychologically dying” and that she experienced a deep sense of loss and feared that she would never get her son back. During this time period Mrs. Crockett learned through relatives of Mr. Crockett that her son had been in a car accident with his grandmother a few days earlier. She testified that she had no information as to the seriousness of the accident and did not know if her son had been hurt. She testified that not knowing whether her son had been injured or hospitalized caused “a great deal of stress and anxiety and emotional breakdown for me.” Mrs. Crockett testified that she suffered mental pain, anguish, humiliation and embarrassment as a result of Mr. Crockett’s noncompliance with the child custody order.
The concept of a continuing tort as it affects the prescription issue was examined by the Louisiana Supreme Court in South Central Bell Telephone Company v. Texaco, Inc., 418 So.2d 531 (La.1982). In that case polyethylene telephone cables were slowly broken down by gasoline leaks from several nearby service stations. The court found, “When the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated. The damage did not end merely because South Central Bell decided that all of its cables would eventually have to be replaced. Where the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage.” The analy *1234 sis of the continuous tort concept for the purposes of determining when damages were sustained, i.e. prescription, may also be used in determining where damages were sustained, i.e. venue. The court in South Central Bell, 418 So.2d 531, found a continuous tort to be one where “the tortious conduct and the resulting damages continue.” The continuing tort concept was recognized also in Laughlin v. Breaux, 515 So.2d 480 (Ct.App. 1st Cir. 1987), where this Court noted “The principle of a continuing tort only applies when continuous conduct causes continuing damages.” In the case sub judice, damages were continuing for the seventy-seven days that Mrs. Crockett was deprived of her rightful custody. At the same time, the wrongful conduct was continuing every day during the time period that Mr. Crockett refused to return the child to Mrs. Crockett’s rightful custody. The defendants’ attempt to limit venue by maintaining that Mr. Crockett was in Jefferson Parish when he decided to violate the Ter-rebonne Parish court order completely overlooks the fact that the tort was a continuing one, and that the actions by Mr. Crockett were continuing every day that the child was not returned to Mrs. Crockett. For approximately twenty-seven days, Mrs. Crockett was in Terrebonne Parish attempting to have her child returned to her custody. This Court recognizes that every parish in which damages are sustained is not necessarily one of proper venue. However, in this case, the facts were well established by Mrs. Crockett’s testimony at the venue hearing that a large portion of the damages was sustained in Ter-rebonne Parish and the trial court made a factual finding that a large portion of the damages was sustained in Terrebonne Parish. We have found no manifest error in those findings, and in the absence of manifest error, we are restrained from disturbing those factual findings. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973).
For the foregoing reasons, the trial court judgment overruling the exception of improper venue is affirmed. Costs are assessed against appellants.
AFFIRMED.

. The court noted by footnote that ordinarily, the burden of proof is on the exceptor. Town of Grand Isle v. Dynamic Constructors, Inc., 374 So.2d 703 (La.App. 1st Cir.1979.)

. Mr. Crockett did not join in the appeal of the district court’s decision following remand which overruled the exception of improper venue.

. As noted by this court previously, usually the burden of proof is on the exceptor. Town of Grand Isle v. Dynamic Constructors, Inc., 374 So.2d 703 (La.App. 1st Cir.1979).

. The Louisiana Supreme Court granted writs on the contempt judgment, in part, and the sentence for contempt was reduced to coincide with time already served.

. After Mr. Crockett filed a petition for change of custody in Jefferson Parish, the trial court in Jefferson Parish ordered ex parte that the child remain in Jefferson Parish pending a hearing on the custody petition. Mrs. Crockett filed for visitation in that court and was granted supervised visitation at the day care center only.