SUSAN M. CHEHARDY, Judge, Pro Tempore.
This appeal arises from a tort suit for damages filed by plaintiff, Greg Fuselier (Fuselier), alleging that defendant, The Guardian Life Insurance Company of America (Guardian), through its agent and co-defendant, Steven Sciambra (Sciambra), misrepresented the terms of two insurance policies it sold to Fuselier. Guardian excepted to the suit on the grounds of prescription, and the trial judge maintained the exception and issued a judgment in favor of Guardian, dismissing the action at the plaintiffs cost. Fuselier appeals from that adverse judgment. For the following reasons, we affirm.
Plaintiff Fuselier alleged in his petition that on June 28, 1988, defendant Sciambra, an insurance agent for Guardian, sold him both a term life insurance policy and a disability insurance policy. Fuselier further alleged that Sciambra, as Guardian’s agent, represented to him that after he paid a monthly premium of $307.00 per month for a period of 36 months, Fuselier would own a paid up term life insurance policy with a benefit of $100,000.00 and paid up disability income protection of $36,000.00 per year. Fuselier granted Guardian the right to automatically debit his checking account at Hibernia National Bank in the amount of the premium[1]. Fuselier’s account was accordingly debited on a monthly basis until August 16, 1993, when Fuselier cancelled the debit authorization. Fuselier alleged that his account was actually debited for a period of 63 months (well beyond the three year period Fuselier believed he had agreed to) for premiums totalling $19,341.00.
Fuselier filed his Petition for Damages on December 27, 1993, claiming that Sciambra misrepresented the terms of the policies, that he would not have purchased the policies had he been aware of this misrepresentation, and that he is entitled to a refund of all premiums paid. Guardian filed an exception of prescription on September 9, 1994, contending that Fuselier had actual or constructive knowledge more than one year prior to filing the complaint that Guardian had continued to debit his account. Guardian further argued that the only actionable conduct alleged by Fuselier in his petition was the misrepresentation by Sciambra as to the terms of the policies, and that this conduct occurred in 1988, five years prior to the filing of the lawsuit. Under either argument, Guardian contended, Fuselier had filed his suit beyond the one year prescriptive period set forth in La.Civ.Code art. 3492 and LSA-R.S. 9:5606. *43 A hearing was held on the exception in the district court, and the trial court held that the plaintiffs claims were barred by prescription.
The sole issue before us is whether the trial court erred in maintaining defendant’s exception of prescription. Delictual actions are subject to a liberative prescription of one year, which begins to run from the day the damage or injury is sustained. La.Civ.Code art. 3492. LSA-R.S. 9:5606, pertaining specifically to prescription in actions against insurance agents or brokers, provides in part:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
Fuselier argues that defendants committed a continuing tort which began on June 28, 1988, with the misrepresentation by Seiam-bra and ended on August 16, 1993, the date that Fuselier cancelled the debit on his checking account. Consequently, plaintiff contends, his petition was filed within the one year prescriptive period. Plaintiff relies on Bustamento v. Tucker, 607 So.2d 532 (La.1992); and South Central Bell Telephone Company v. Texaco, Inc., 418 So.2d 531 (La.1982) in support of his position.
In South Central Bell Telephone Company v. Texaco, Inc., 418 So.2d at 533, the Louisiana Supreme Court held a continuing tort to be one in which “the tortious conduct and the resulting damages continue.” See also Colbert v. B.F. Carvin Const. Co., 600 So.2d 719 (La.App. 5 Cir.), writs denied, 604 So.2d 1309; 604 So.2d 1311 (La.1992). Continuous damage alone is not sufficient to give rise to a continuing tort. Moreover, in Bustamento v. Tucker, 607 So.2d at 542, the Supreme Court held that “... when the acts or conduct are continuous on an almost daily basis, by the same actor, of the same nature, and the conduct becomes tor-tious and actionable because of its continuous, cumulative, synergistic nature, then prescription does not commence until the last act occurs or the conduct is abated.”
Guardian argues — and we agree — that the only tort plaintiff alleged in his petition was the misrepresentation by Sciambra in June, 1988, more than five years prior to the filing of the petition. Plaintiff did not allege in his petition that Guardian made an unauthorized appropriation of funds from his bank account. On the contrary, plaintiff admits in his petition that he granted Guardian the right to automatically debit the premium each month from his checking account. Plaintiff asserts that he did not discover Sciambra’s deception until August, 1993, when he learned that Guardian continued to debit his account. Evidence presented by defendant at the hearing on exception of prescription shows, however, that plaintiff had actual or constructive knowledge of the continuing debits as early as March, 1992, and perhaps earlier.
In a deposition taken July 14,1994, Fuselier’s accountant, Leo MeKeough, testified that during the period at issue, his office handled Fuselier’s account. MeKeough himself had complete oversight of Fuselier’s account, and his duties included reconciling Fuselier’s monthly bank statements. MeKeough further testified that he was aware as early as January, 1992, that Guardian was still debiting Fuselier’s Hibernia bank account each month. MeKeough then attempted to contact Sciambra, but was told by the staff at Guardian that Sciambra had left the company and his whereabouts were unknown. MeKeough prepared a letter to Guardian for Fuselier’s signature, inquiring as to why Guardian had not met the policy terms promised by Sciambra. In a letter to Fuselier dated March 9, 1992, Ann Bond of Guardian informed him that under the actual terms of the policy, premiums were due for a *44 period of ten years. Because Fuselier was aware of Sciambra’s misrepresentation in March, 1992 or earlier, his lawsuit is barred by prescription. We find that the record supports the trial court’s holding.
For the reasons assigned, the judgment maintaining the defendant’s exception of prescription is affirmed. Costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.

. Fuselier's bank records, copies of which are part of the record, indicate that there were two separate debits made each month to Guardian; one in the amount of $135.06 and the other in the amount of 167.34 for a total of $302.40.