**DEBRA WINESBERRY**     *     **NO. 2024-CA-0166**

**VERSUS**     *

           **COURT OF APPEAL**

**ST. BERNARD PARISH**     *
**GOVERNMENT**

           **FOURTH CIRCUIT**

    *

           **STATE OF LOUISIANA**

* * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 23-1578, DIVISION "DIVISION D"
Honorable Darren M Roy, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Dale N. Atkins)

**ATKINS, J., CONCURS IN THE RESULT.**

Darleen M. Jacobs
Hunter Peter Harris, IV
Rene' Daniel Lovelace
823 St. Louis Street
New Orleans, LA 70112-3415

      COUNSEL FOR PLAINTIFF/APPELLANT

Perry M. Nicosia
DISTRICT ATTORNEY
Alexis R. Berges
Justin W. Stephens
St. Bernard Parish District Attorney's Office
1101 West St. Bernard Highway
Chalmette, LA 70043

      COUNSEL FOR DEFENDANT/APPELLEE

                   **REVERSED AND REMANDED.**
                      December 17, 2024

Plaintiff, Debra Winesberry ("Winesberry"), is a property owner who is seeking compensation from St. Bernard Parish ("the Parish") for flooding of her property. She alleges that the frequent flooding of the land surrounding her home is caused by "lack of maintenance" of works on adjacent property.

In 2006, the Parish installed underground drainage pipes on its property adjacent to Winesberry's home. She alleges that, since the pipes were installed, she has suffered flooding on her property whenever there is a substantial rain. Winesberry alleges that she is unable to access her home when it is flooded. The Parish filed an exception of prescription in response to Winesberry's petition. The trial court granted the exception, dismissing Winesberry's case. Winesberry appeals that judgment here. We disagree with the trial court's reasoning and vacate the judgment granting the exception.

***Facts and prior proceedings***

Winesberry alleges that the Parish failed to "level the ground," over and near the construction site. She alleges that the Parish created "hills which have caused flooding" continuously since the time of the construction. Winesberry characterizes her claim against the Parish as one for defective maintenance. The Parish argues that Winesberry had actual notice that the project was flooding her

1

property as early as 2006 and that the three-year prescription for appropriation under La. R.S. 13:5111 applies. The Parish relies on the Supreme Court's construction of 13:5111 in *Crooks v. Dep't of Nat. Res.,* 2019-0160 (La. 1/29/20), 340 So. 3d 574. In *Crooks*, a federal navigation project increased flooding of property belonging to the riparian owners on the banks of the Little River.

In the judgment granting the Parish's exception, the trial court did not grant Winesberry leave to amend her petition to state a cognizable claim. For the reasons that follow below, we need not address that error. We focus our attention instead on the issue of prescription.

### Continuous tort

Plaintiff's primary argument is that she has alleged a continuous tort for which she is entitled to damages from 2006 forward. This argument is supported by *S. Central Bell Telephone Co. v. Texaco, Inc.*, 418 So. 2d 531(La. 1982), in which the court held:

> When the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated. … Where the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage.

*Id.*, at 533. Our court most recently examined the continuous tort doctrine directly in *Lopez v. House of Faith Non-Denomination Ministries*, 2009-1147 (La. App. 4 Cir. 1/13/10), 29 So. 3d 680. In *Lopez*, a derelict building fell on the plaintiff's home causing damage that worsened with time. We held that, "…where the operating cause of injury is a continuous one and gives rise to successive damages, prescription dates from the cessation of the wrongful conduct causing the damage." *Lopez,* 2009-1147, p. 4, 29 So. 3d at 682. The reasoning in *Lopez* adopts the traditional Civilian view of continuous property torts as explained below:

2

> [A] distinction is made between continuous and discontinuous causes of injury and resulting damage. When the *operating cause of the injury* is 'not a continuous one of daily occurrence', there is a multiplicity of causes of action and of corresponding prescriptive periods. Prescription is completed as to each injury, and the action is barred upon the lapse of one year from the date in which the plaintiff acquired, or should have acquired, knowledge of the damage....[This is to be distinguished from the situation where] the '*operating cause of the injury* is a continuous one, giving rise to successive damages from day to day....'. A.N. Yiannopoulos, Predial Servitudes, § 63 (1983).

*Lopez*, 2009-1147, p.3, 29 So. 3d at 682. (emphasis in original). In *Lopez*, we applied Yiannopoulos' reasoning and held that prescription did not begin to run against the plaintiffs until the remains of the fallen building were cleared from their home. As applied in the case now before us, the *operating cause* of Winesberry's damage is "hills" created by the Parish's construction. Under continuing tort theory, as we have accepted in *Lopez*, prescription on Winesberry's claim would only begin after the offending hills were removed.

### Inverse condemnation (appropriation)

Above, we noted that the public construction in *Crooks* was designed to raise the water level in Little River to improve its navigability. The plaintiffs were aware that the new river controls were designed to cause some increased cyclical flooding in the low-lying properties near the river. The aims of the construction project that is the subject of this litigation are distinctly different. Here, the Parish has spent time, energy and taxpayers' money to prevent flooding. Nothing in the *Crooks* reasoning leads us to believe that every time a public project causes flooding in a discrete area the private property owner loses a valuable property right.

In *Crooks*, the Supreme Court specifically overruled *Cooper v. Louisiana Department of Public Works*, 2003-1074 (La. App. 3 Cir. 3/3/04), 870 So. 2d 315.

3

It appears that *Cooper* was singled out for extinction because it was also a flooded property case related to the same project that caused the flooding in the *Crooks* case. We believe that the coupling of those two cases signals an intent of the court to direct its appropriation rule only to cases in which the public taking already in effect would necessarily result in flooding. Our reading of the decision in *Crooks* is buttressed by the language of La. R.S. 13:5111(B) which provides:

> The rights of the landowner herein fixed are in addition to any other rights he may have under the constitution of Louisiana and existing statutes, and nothing in this Part shall impair any constitutional or statutory rights belonging to any person on September 12, 1975.

This subpart of the statute alerts us to the fact that the purpose of the statute was to bestow additional rights on private property owners, not to derogate from those rights already extant. To hold that a public project would take away private property rights by a quirk of design would decidedly impair Winesberry's constitutional and statutory rights. Such a holding would directly contradict the very statute on which the Parish rests its argument.

### *Conclusion*

The longstanding Civilian doctrine of continuous tort would lead us to conclude that prescription had not yet begun to run against Winesberry's claim at the time she filed her suit. We do not believe that the Supreme Court's decision in *Crooks* was intended to apply to every incident of flooding caused by a public project. In keeping with that understanding and based on the reasons above, we overrule the trial court's opinion, vacate the judgment granting the exception of prescription and remand for further proceedings in keeping with this decision.

**REVERSED AND REMANDED.**