544 So.2d 691 (1989)
Leora Lacey HAMM, formerly Mrs. John Lacey, Plaintiff-Appellee,
v.
Kyle A. AMY, d/b/a Amy Contractor, Inc. and Austin Provost, Jr., d/b/a Provost Tin Shop, Defendant-Appellee (Amy), Defendant-Appellant (Provost).
Nos. 88-141, 88-363.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
Constance A. Koury, Lafayette, for plaintiff-appellee.
Bruce A. Gaudin, Opelousas, for defendant-appellant.
Jeansonne & Briney, Wm. F. Page, Jr., Patricia Ackel, Lafayette, for defendant-appellee.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
STOKER, Judge.
In this suit the homeowner sued in contract and in tort alleging she was damaged *692 by faulty roof repairs done by a general contractor through a subcontractor. The issues are whether the tort claim has prescribed under the one-year prescription provided by LSA-C.C. art. 3493 and whether the suit has been brought in the proper venue. The issues are raised through exceptions in two separate appeals, one by the subcontractor as to the main action of the plaintiff and one by the subcontractor as to the third-party action brought by the general contractor.[1] The exceptions were heard and acted upon by two different trial judges. The general contractor appears here only as an appellee in the subcontractor's appeal. The two appeals involve the same issues, and we consider them together.
The trial courts held that prescription of the tort action had not run. We reverse and hold that prescription had run. However, these holdings do not affect the plaintiff's action or the third-party action based on breach of contract.
The defendant, Austin Provost, Jr., d/b/a Provost Tin Shop (Provost), has appealed the trial court's denial of his exceptions of prescription and venue asserted against the claims of the plaintiff, Leora Lacey Hamm, and the third-party demand of Kyle A. Amy, d/b/a Kyle A. Amy Contractor, Inc. (Amy). Mrs. Hamm filed suit against Amy and Provost seeking damages which resulted from allegedly defective repairs to the roof on her home in Lafayette. The plaintiff alleged that Amy, as the general contractor, hired Provost to make certain roofing repairs during the course of remodeling construction done on her home by Amy. The roofing repairs were completed on or about August 2, 1982, and the work was paid for at that time.
Shortly after the work was completed, the plaintiff began to notice numerous defects in the roofing work. The plaintiff alleged that she sustained extensive damage to her home as a result of Provost's defective workmanship, as well as embarrassment because of the unsightly damage to her home. The plaintiff filed suit on July 23, 1987.
Provost filed exceptions of prescription and venue asserting that plaintiff's claim in tort had prescribed by the passage of one year from August of 1982 and that venue was improper in Lafayette Parish because both defendants were domiciliaries of St. Landry Parish. Amy filed a third-party demand against Provost for any amounts that it might be cast in judgment in favor of plaintiff and Provost urged the same exceptions against Amy.
After a hearing on the merits of the exceptions, the trial court held that the leaking roof on plaintiff's home, which allegedly resulted from Provost's repairs, constituted a continuing tort; therefore, prescription would not begin to run until the tortious conduct was abated. The trial court did not discuss the venue issue in its written reasons for judgment, but denied both of Provost's exceptions. Subsequent to the trial court's ruling on those exceptions, Provost excepted to Amy's third-party demand on the basis of prescription and venue. These exceptions were also denied. Provost has appealed both of these judgments and they have been consolidated for purposes of appeal.

PRESCRIPTION
Provost argues that under LSA-C.C. art. 3493[2] plaintiff's tort claim has prescribed by the passage of one year since she acquired or should have acquired knowledge *693 of the damage caused by the roof. Provost maintains that plaintiff had sufficient knowledge as early as December 1982 that the roof might be defective. Provost also argues that the trial court erred in holding that prescription had not run because the conduct in this instance constituted a continuing tort.
Plaintiff maintains that she was not absolutely sure that the roof was causing the problems that she complained of until August of 1986 and that prescription did not begin to run until that time. Moreover, plaintiff contends that Provost's conduct makes the continuing tort doctrine applicable and, at the very least, he is liable for those damages which she sustained within the year prior to the filing of her suit.
The trial court, in its written reasons for ruling, made factual findings, in pertinent part, as follows:
"Briefly, the facts indicate that plaintiff contracted with defendant Amy to effect repairs on her roof. Mr. Amy subcontracted the work to defendant, Provost. The work was completed on August 2, 1982. Soon after completion, plaintiff began to experience problems which are still occurring and which allegedly are as a result of the repairs on the roof in 1982."
The trial court further stated that:
"It would appear that defendant[`]s `Tortious Conduct' was the repair on the roof which has allowed water to cause continuing damage to plaintiff's home. The facts are similar, in a way, to those in Perkins v. Simon (3 CAR 1972) [sic] 265 So2 804 [(La.App. 3d Cir.1972)] and South Central Bell Telephone Vs. Texaco, Inc. (S.C.1982) 418 So2 531. [(La.1982)]. In both of the cited cases the plaintiff suffered continuing damages from leaking water in the first case and leaking gasoline in the second. In both cases defendants owned the offending instrumentalities that were leaking. In the Perkings [sic] and South Central Bell cases the Court held that there was a continuing tort until the leaks were repaired."
The trial court then went on to find that, analogous to the above-cited cases, the cause of the damage in plaintiff's case was leaking water and that "the alleged conduct (the roof repair) causing the leak has not been abated." The trial court correctly found that the alleged tortious conduct was the roof repair done in 1982, but we find that the trial court was clearly wrong in concluding that this conduct constituted a continuing tort.
The alleged tortious conduct in this case consisted of the allegedly defective repairs to the roof in August of 1982. While the damages caused by the allegedly defective repairs have been continuing or progressive in nature, the repairs by Provost (conduct) occurred only once. A continuing tort is one in which "the tortious conduct and resulting damages continue." (Emphasis added.) South Central Bell Telephone v. Texaco, Inc., 418 So.2d 531, 533 (La.1982). In such cases prescription will not run until the conduct causing the damage is abated.
In the South Central Bell Telephone case the tortious conduct was the action of Texaco and Shell, as the owners of underground gasoline tanks, in allowing their tanks to leak causing damage to plaintiff's underground cables. The trial court found that this was a continuing tort, but that the final damage to the cables was done in September of 1974; therefore, plaintiff's October 16, 1975 suit was not timely. The Supreme Court reversed as to Shell, finding that Shell's wrongful conduct (allowing its tanks to leak) was not abated until the tanks were replaced in December of 1985. The court found that even though South Central Bell decided to replace its cables in September of 1974 because of the leakage, this did not end the damages because the cables remained susceptible to further damage from the gasoline. Accordingly, prescription did not begin to run until the cessation of the wrongful conduct causing the damage.
In Perkins, the plaintiff sustained damage to his property as a result of a city fire hydrant being broken causing water to flow onto his property. The trial court *694 dismissed plaintiff's suit on an exception of prescription and plaintiff appealed. Plaintiff alleged that he suffered damages until November 18, 1969. The plaintiff contended that the rental property was occupied until November 18, 1969 at which time his tenant vacated the premises. Therefore, plaintiff argues the property was rendered uninhabitable as a result of the water flow from the broken hydrant which occurred between May 7 and May 17, 1969. Plaintiff argued that the breaking of the hydrant and subsequent flow of water was a continuing tort; therefore, prescription did not begin to run until his last damage occurred in November. The court of appeal found that there was no continuing tort because the operating cause of the injury (the water flow) ceased on May 17 and was not continuous as of November 18. The court concluded that the damage to plaintiff's property occurred on or before May 17, 1969; therefore, a September 24, 1970 suit was not timely.
We conclude that neither of these cases is controlling in the case before us. As the court noted in its written reasons, the instrumentalities which caused the damages in South Central Bell Telephone and Perkins were owned by the defendants in those cases. In the case at hand, the complained of repairs which resulted in the alleged defects in the roof occurred only once and defendant, Provost, did not own or control the instrumentality causing the continuing damages. We find and so hold that the continuing tort doctrine is inapplicable in this case.
Since we find that the alleged wrongful conduct in this case was not continuous, plaintiff's action is governed by a one-year prescriptive period. LSA-C.C. art. 3493. This one-year prescriptive period begins to run from the day the owner acquired or should have acquired knowledge of the damage to the immovable property. C.C. art. 3493.
Plaintiff, in her petition, stated that several months after the roofing repairs were completed she began to notice numerous defects in the roofing work. She testified that gravel began to wash off of the roof and that her son noticed blisters in the roof in December of 1982. In 1983 the roof developed leaks around a skylight. This problem was repaired by Provost at that time. In 1983, plaintiff testified, she found that the exterior paint on her eaves was blistered and this was repainted by Amy. She testified that she also noticed black spots on the paint. When asked at what point she first began to believe that the ongoing paint problems were related to a leaking roof, plaintiff testified that she questioned it all along. She stated that, "I had problems with paint, and I was worried about the roof from the very beginning when my son saw the blisters. No one answered me on any of these questions. I notified them. Every opportunity that I had to talk to Mr. Amy, I would say something about the blisters. I didn't know if this was supposed to be or not. And that's all I would discuss was the paint and the blisters with him."
Plaintiff was obviously aware that something was amiss due to recurrent problems with peeling paint and mildew, yet did not attempt to ascertain the source or cause of the problem until the fall of 1986 even though she suspected that the roof was the problem. Plaintiff argued below and now on appeal that it was not until August of 1986 that she suspected the roof was causing her damages and did not know this for certain until October or November of 1986.
"The burden of proving suspension of prescription due to lack of knowledge rests with plaintiff. Although prescription does not run against one who is ignorant of the fact that would entitle him to bring his suit, knowledge of the fact is presumed where plaintiff has sufficient information to incite her curiosity as to the cause of the injury." (citations omitted) Bayonne v. Hartford Insurance Company, 353 So.2d 1051, 1052 (La.App. 2d Cir.1977).
We believe that plaintiff's awareness of her paint problems coupled with her own admission that she questioned whether the problems were related to the roof all along are sufficient to have incited her curiosity as to the cause of the damage much earlier than October or November of 1986. We must presume that plaintiff had knowledge as early as 1983 and no later than 1984 that *695 the roof was defective. We find that prescription began to run at that time and hold that plaintiff's suit, filed in July of 1987, was not timely. Plaintiff's tort action has prescribed.

VENUE
"When a plaintiff institutes an action on more than one theory, arising out of one factual circumstance, and venue is proper as to any theory, the trial court has venue to decide any or all claims." Hebert v. Myers, 449 So.2d 185 (La.App. 3d Cir. 1984); LSA-C.C.P. art. 45.
Because we find that plaintiff's tort action has prescribed, what would have been proper venue (Lafayette Parish) to decide both the tort action and the contract action is no longer proper. LSA-C.C.P. art. 42 requires that suit be filed against the defendant in the parish of his domicile. Provost's domicile is in St. Landry Parish, therefore, suit must be brought in that parish.
We remand the case to the trial court for dismissal without prejudice or for transfer to the appropriate venue at the court's discretion.

CONCLUSION
For the reasons stated hereinabove, the trial court's denial of Provost's peremptory exception of prescription, insofar as it relates to plaintiff's claim sounding in tort, is reversed. The trial court's denial of Provost's declinatory exception to venue is reversed, and the case is remanded for further proceedings below in accordance with the views expressed herein. As concerns the trial court's denial of Provost's exceptions of prescription and venue urged in response to Amy's third-party demand, that ruling is also reversed insofar as it asserts any claims for indemnification arising out of plaintiff's tort claim against Provost.
Accordingly, the judgments of the trial court are hereby reversed, and the case is remanded for further proceedings below.
REVERSED AND REMANDED.
NOTES
[1] The subcontractor (Austin Provost, Jr., d/b/a Provost Tin Shop) filed exceptions of prescription and venue against the general contractor (Kyle A. Amy, d/b/a Kyle A. Amy Contractor, Inc.) after the trial court had already ruled on Provost's exceptions filed as to the main action of the plaintiff. Consequently, the rulings of the two trial judges were handed down at different times and the appeals reached this court at different times. The appeal as to the plaintiff was given docket number 88-141 in this court, and the appeal as to the third-party action of Amy was assigned docket number 88-363.
[2] Art. 3493. Damage to immovable property; commencement and accrual of prescription

When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage.
Acts 1983, No. 173, § 1.