806 So.2d 912 (2002)
DIVISION PLACE PARTNERSHIP
v.
CARL E. WOODWARD, INC., Ehlinger & Associates, P.C., The Mooney Associates Company, and Conspec Systems, Inc.
No. 2000-CA-2151.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 2002.
Rehearing Denied February 28, 2002.
*913 Bruce L. Feingerts, Gary S. Brown, Feingerts & Kelly, PLC, New Orleans, LA, Counsel for Plaintiff/Appellant.
Stewart E. Niles, Jr., Karen M. Fontana, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, Counsel for Defendant/Appellee, Conspec Systems.
C. Michael Pfister, Jr., Dana Anderson Carson, Duplass, Zwain, Bourgeois & Morton, Metairie, LA, Counsel for Defendant/Appellee, Fireman's Fund Ins. Co.
Victor A. Dubuclet, III, Borrello & Dubuclet, Metairie, LA, Counsel for Defendant/Appellee, Liberty Mutual Ins. Co.
Court composed of Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS, SR., and Judge DAVID S. GORBATY.
Judge DENNIS R. BAGNERIS, SR.
Division Place Partnership ("DPP") seeks to reverse the trial court's judgment granting the exception of prescription filed by Conspec Systems, Inc. and Fireman's Fund insurance Company.

FACTS
In June 1984, DPP along with John Schwegmann of Schwegmann Westside Inc., contracted Carl E. Woodward, Inc., ("Woodward") to construct an office building known as Division Place, located at 3001 Division Street, Metairie, Louisiana. Ehlinger and Associates ("Ehlinger") were the Architects for the construction project.
The construction project begun in the summer of 1984. Division Place was completed in February 1988. Prechter and Associates, Inc., were contracted to be the property manager for Division Place. Prechter and Associates were the first tenants of Division Place.
*914 In November 1992, Stephen Prechter noticed that the horizontal soffit panels on the building appeared streaked and stained. Initially, Prechter thought the spots were dirt, but the spots and stains could not be removed when he had a portion of the panel cleaned. Precheter contacted Woodard and requested an inspection to be done on the panels.
On November 25, 1992, Prechter wrote a letter to Woodard, detailing his complaints regarding the panels on the building at Division Place. Prechter also contacted David Erath, Chief Financial Officer for DPP, to discuss the problem with the panels and the costs of replacement panel.
Erath contacted Bruce Feingerts, DPP's attorney, regarding the claim arising out of the allegedly defective panels. Feingerts sent a letter to Armand LeGardeur of Woodard, requesting that he investigate the problem with the panels.
In January 1993, LeGardeur responded and disclaimed any responsibility on behalf of Woodward. LeGardeur stated he and Ehlinger met with Precheter on January 6, 1993. He acknowledged the discoloration and spotted area on both the lower and higher soffit of the panels. However, Le-Gardeur concluded that the evidence indicated that some foreign matter (either induced or through the atmosphere) had possibly attacked the soffit panels as contrasted to discoloration of the panels itself. Further, he stated that Woodward had hired a chemist to analyze the spotted material and to prepare a report on his findings. Thus, LeGardeur concluded that Precheter's conclusion that the problem was defective panels was premature and unwarranted.
On February 4, 1993, LeGardeur wrote another letter to DPP's attorney, Feingerts regarding the chemist's report and findings. The chemist's report attributed the cause on a rinse on one or more occasions with a substance containing chlorine sulfur and aluminum. (The chemist identified the foreign substance removed from the panel to be "corrosion product".) Further, the visual appearance of the building (i.e., staining, streaking, corrosion) was consistent with the application of a liquid substance to the building with a power wash applicator.
On March 11, 1993, Ehlingher contacted John F. Schwegmann regarding the panels in the building. He stated that he believed that the building had been cleaned with a deleterious substance, which caused the pitting and discoloration (corrosion) of the panels.
On December 30, 1993, DPP filed a lawsuit against Woodward, Ehlinger, Conspec and Mooney. On March 17, 2000, the trial court heard oral argument on the exception of prescription filed Conspec and Fireman's Fund Insurance Company. On March 21, 2000 the trial court granted the exception of prescription. DPP appeals from the trial court's judgment. We affirm.

PRESCRIPTION
On appeal, DPP argues that trial court erred in granting the exception of prescription and that:
(1) The trial court erred when it determined that DPP had sufficient knowledge of a manufacturing defect in the building panels to begin the running of the one-year prescriptive period on its claim.
(2) The trial court erred when it failed to follow the holding and rationale set forth in Beth Israel v. Bartley, Inc., 579 So.2d 1066 (La.App. 4 Cir. 1991).
(3) The trial court erred when it applied the improper legal standard for the *915 commencement of the tolling of prescription.
(4) The trial court erred when it failed to find that the running of prescription was suspended under the doctrine of contra non valentem agere nulla currit praescript.

Traditionally, builders, craftsmen and manufacturers have been held to a high standard of accountability for their workmanship. Tuminello v. Mawby, 57 So.2d at 666. The manufacturer of a product is presumed to have knowledge of any defect in what he makes; therefore a claim is timely if the year has not elapsed since discovery of the vice. Discovery is not presumed. It must be proven by the seller/manufacturer. La.C.C. Art. 2546; Schwehm v. Superior Pontiac Company, 463 So.2d 22 (La.App. 5th Cir.1985). The manufacturer has the burden of proving by a preponderance of the evidence that the purchaser discovered the vice more than one-year prior to filing suit. Jordan v. Employee Transfer Corporation, 509 So.2d 420 (La.1987); Beth Israel v. Bartley Inc., 579 So.2d 1066, (La.App. 4 Cir.1991).
Liberative prescription of one year is also applicable to delictual actions so that a products liability claim is also subject to a one-year limitation from the injury or damage or from the date the victim became aware of the defect. La.C.C. Art. 3492; Hamm v. Amy, 544 So.2d 691 (La. App. 3rd Cir.1989). One year from DPP's discovery of the panel vice or defect is the applicable standard.
Prescription does not commence to run until the plaintiff has actual or constructive knowledge of the tortious act, the damage caused, and the causal relationship between the tortious act and the damage. Reed v. General Motors Corporation, 400 So.2d 919 (La.App. 1st Cir. 1981), writ denied 406 So.2d 625 (La.1981). A person cannot bring suit until his cause of action has accrued and therefore prescription cannot run until that time. Guderian v. Sterling Sugar & Railway Company, 151 La. 59, 91 So. 546 (1922). Mere apprehension that something might be wrong is not sufficient. Griffin v. Kinberger, 507 So.2d 821 (La. 1987).
Under the doctrine of contra non valentem agere nulla currit praescriptio, prescription does not run against one who is ignorant of the existence of a fact that would entitle him to bring suit as long as that ignorance is not willful and does not result from his own neglect or negligence (even if his ignorance was not induced by the defendant). The doctrine also prevents the running of prescription where the debtor/manufacturer has concealed the fact of the obligation/defect or has committed other acts to prevent the creditor/buyer from ascertaining knowledge of the existence of the defect or availing himself of his cause of action. Corsey v. State Through Department of Corrections, 375 So.2d 1319 (La.1979). See Young v. Clement, 367 So.2d 828 (La.1979); Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970).
Prescription does not run as long as it is reasonable for the victim/plaintiff not to recognize that the condition or problem may be related to the treatment or defect. The focus is on the reasonableness of the tort victim's action or inaction. Griffin v. Kinberger, 507 So.2d at 821.
Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
*916 Jordan, 509 So.2d at 423.
In the instant case, the trial court in its reasons for judgment stated:
The Court finds that the undisputed facts are as follows; Plaintiff and defendants agreed in brief and oral argument that the plaintiff first had notice of problems with the panel not later than the first two week of November 1992. In fact the plaintiff contacted Carl E. Woodward, Inc., on November 25, 1992, notifying the contractor that the panels became pitted and stained and requested warranty information on the panel. However, the plaintiff did not file suit until December 30, 1993 over one year later. The Plaintiff presented no facts or documents, which suggest that Conspec Systems did or said anything during that which would justify plaintiff's delay in filing suit
The Court finds that the plaintiff was aware of a condition that put the plaintiff on notice that the panels may be defective. For the purpose of beginning the period of time to sue, a claimant does not have to be in position to make an evidentiary showing that the panels were in fact defective. The Plaintiff had sufficient information and was put on notice in November 1992, which required the plaintiff to file suit within one year thereof. The plaintiff failed to file suit within one year.
Thus, it is clear from the testimony that Prechter knew of the panel vice or defect as early as November 1992. Precheter testified he noticed the stains on the panels approximately two to three weeks before he wrote a letter to Woodard, detailing his complaints regarding the panels on the building at Division Place. Further, he testified that the stains could not be removed because he had an employee to attempt to clean them. Prechter testified that he was in daily contact with David Erath, the Chief Financial Officer of DPP, with whom he discussed the problem with the panels and the costs of replacement panels. Precheter testified that he never discussed the panel problem with the owner of the building.
Erath contacted Feingerts, DPP's attorney regarding the claim arising out of the allegedly defective panels. In December 1992, Feingerts sent a demand letter to LeGardeur of Woodard, requesting that he investigate the problem with the panels.
On February 4, 1993, LeGardeur wrote another letter to DPP's attorney, Feingerts regarding the chemist's report and findings. The chemist's report attributed the cause on a rinse on one or more occasions with a substance containing chlorine sulfur and aluminum. The chemist identified the foreign substance removes from the panel to be "corrosion product". Further, the visual appearance of the building (i.e., staining, streaking, corrosion) was consistent with the application of a liquid substance to the building with a power wash applicator.
DPP filed its lawsuit on December 30, 1993, approximately one year and one month after it had actual notice of the defect with the panels on the building. The record is devoid of any evidence that shows that prescription was interrupted or the defendants caused the plaintiff a delay in filing its lawsuit and invoking the doctrine of contra non valentem agere nulla currit praescriptio.

CONCLUSION
Therefore, we find no error in the trial court's judgment granting the exception of prescription. Accordingly, the trial court's judgment is affirmed.
AFFIRMED.