LICENSE TAX—CONSTITUTIONAL LAW—DUTY ON EXPORTS.

1. A license tax upon the business of a buyer of cotton for export is a duty upon exports, within the meaning of the federal Constitution.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by the state against E. Allgeyer & Co. and others to show cause why they should not pay a license as cotton buyers. Judgment for defendants, and the state appeals. Affirmed.

Hugh C. Cage, for the State. Harry H. Hall, for appellees.

PROVOSTY, J. This is a rule against defendants to show cause why they should not be condemned to pay the state a license for conducting the business of cotton buyers. Defendants show that their business consists entirely in filling orders which they receive from abroad for the buying of cotton; that is, they receive the orders, buy the cotton for their foreign clients, who give the orders, and ship the cotton to the foreign country. Defendants clearly are merely exporters, and it is well settled that a tax upon the importer or exporter is an impost or duty upon imports or exports, within the meaning of

the prohibition of the Constitution of the United States against the laying of imposts by the states. United States v. Thomas (C. C.) 115 Fed. 207; Fairbank v. United States, 181 U. S. 283, 21 Sup. Ct. 648, 45 L. Ed. 862; Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678; Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 347; Waring v. City of Mobile, 8 Wall. 110, 19 L. Ed. 342; Machine Co. v. Gage, 100 U. S. 676, 25 L. Ed. 754; Low v. Austin, 13 Wall. 29, 20 L. Ed. 517; American Fertilizing Co. v. Board of Agriculture (C. C.) 43 Fed. 609; Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 347; Cook v. Pennsylvania, 97 U. S. 566, 24 L. Ed. 1015; Leloup v. Port of Mobile, 127 U. S. 640, 8 Sup. Ct. 1380, 32 L. Ed. 311; Webber v. Virginia, 103 U. S. 344, 26 L. Ed. 565; Telegraph Co. v. Texas, 105 U. S. 460, 26 L. Ed. 1067; City of St. Louis v. Western Union Tel. Co. (C. C.) 39 Fed. 59.

Judgment affirmed.

---

(34 South. 799.)

No. 14,391.

GRIFFIN v. DRAINAGE COMMISSION OF NEW ORLEANS et al.

(June 22, 1903.)

PRESCRIPTION—WHEN BEGINS TO RUN—TORT—CONTINUING DAMAGES.

1. Where the commission of a wrongful act is attended immediately by resulting damage, the date at which damage commences is the initial point for the running of the prescription of one year. If the bringing of an action for damage sustained be postponed beyond the year, the plaintiff must (if his property has been in his own possession in the interval) allege and show the state of facts which would remove from the action the bar of prescription. The rule is that, where one of the parties to a suit has more means of knowledge concerning a matter to be proved than the other, the onus is on him.

2. Where the damage resulting from a wrongful act itself (noncontinuing) is continuing and progressive, the party whose property is damaged cannot postpone bringing an action for the same until after the full extent of the damage has been sustained, and then sue for the whole damage. If he does so, the claim for the portion of the damage which he sustained one year prior to the bringing of the action will have been prescribed.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

GRIFFIN v. DRAINAGE COMMISSION.

Action by Michael Griffin against the drainage commission of New Orleans. The National Contracting Company was called in warranty. Judgment for defendants, and plaintiff appeals. Affirmed.

A. E. & O. S. Livaudais, for appellant. Charles J. Théard, for appellee drainage commission. Farrar, Jonas & Kruttschnitt, for appellee National Contracting Co.

## Statement of the Case.

NICHOLLS, C. J. Plaintiff prays for judgment for damages against defendant for $4,340, with legal interest from judicial demand, alleging: That he is the owner of a certain property on St. Louis street, at the corner of North Liberty, together with the buildings thereon. That some time in the first part of the year 1899 defendant undertook the excavation of St. Louis street for the purpose of placing a drain conduit thereunder; cutting a trench of great depth and width along said street, and in close proximity to the foundations and walls of his building. That in the performance of the work through their agent, the National Contracting Company, neither the defendants, nor their agent acting under their instructions, took any of the precautions needful and necessary to assure plaintiff's property protection from the consequences of such dangerous work, but persistently continued the cutting of the ground in close proximity to said building. That the consequence of said reckless and negligent conduct of the defendant was that the foundation of the building, being deprived of its point of resistance, gave way and caved in to a further depth, thus entailing to the building the damages which he complained of in his petition. That the full amount of said damages consequent upon the acts complained of was not realizable at the time, and the proximate and consequent result of said damage had been continuous and increasing up to the filing of his demand. That in the month of April, 1899, the front of the building on St. Louis street had already settled to the extent that the first floor showed a fall of two and three inches towards that street, and there were many cracks in the walls on both sides, caused by the sinking of the foundations of the building, necessarily entailing damages to the interior of the same.

That in the month of April, 1901, the damage was still increasing, owing to the continued sinking and caving of the foundations of the building. That on various occasions during the time the work of excavation was going on, and since, he had called upon the city engineer, notifying him of the condition of things then existing, asking for some relief in the premises. That he had called upon the late mayor, asking for his intervention in the matter, and all to no avail. That he had repeatedly called upon the defendants and notified them of the damage done to his property, and called upon them to repair the same or to pay some indemnity for said damage, and they had refused to do so.

That while awaiting some relief in the premises he had been forced to expend for the repair of the building certain items of expenditure, which he would thereafter show.

That on May 3, 1901, he was notified in writing by the commissioner of public works that the building must be promptly repaired in a substantial manner, or demolished within three days of the notice. That in compliance with said notice he had undertaken to place the building in such condition of temporary repair and safety as would insure the general public from danger of its collapse or crumbling at any moment, but that the condition of the building was then such that it must be necessarily demolished, and that at an early day. That owing to the condition of the building, due to the damage caused by defendant, he had lost in rental of the same up to the filing of his petition the sum of $200. That for painting, brickwork, and labor expended in repairs to make the house habitable he had paid $40, and he had suffered damages for loss of time and inconvenience in the sum of $100.

That the tearing down and rebuilding of the building, made absolutely necessary by the acts of the defendant, using so much of the material as could be used, would amount to the sum of $4,000. All of items of necessary expenditure in the premises, including loss on rent, inconvenience, etc., amounted to $4,340, and for this amount he prayed judgment against the defendant.

The defendant first pleaded the general issue. It then averred that if, in the exca-

vation of the drainage canal in St. Louis street, any damage was wrongfully done to plaintiff's building (which was denied), the same was the act of the National Contracting Company, and that the latter was responsible therefor under its contract with it, and it was bound to warrant and defend defendant accordingly. At its instance that company was called in warranty. Judgment was contingently asked against it.

The National Contracting Company answering, pleaded the general issue. In bar of plaintiff's demand it pleaded the prescription of one year, and in support thereof it averred that the work in front of plaintiff's building was completed in the year 1898, more than two years before he brought his suit.

It denied that plaintiff's building was injured by any of the work conducted by it as the contractor of the drainage commission, and averred that it was conducted with all due care and precaution. It averred that, if any damage had occurred to plaintiff's building, it had occurred long since its work was completed, and was the result of the drying of the soil by seepage into the canal, and for damages of that character it was not liable, and not the warrantor of the defendant, and that all such damages were such as had occurred from the execution of the plan of the drainage commission, and was damnum absque injuria.

It denied the damage alleged by the plaintiff, and averred that his house was old and rotten, and had been permitted to go without repairs for years, and that the damages which had occurred, if any, by the seepage of the soil, could be repaired for a very small sum, so as to make the building as good as it was before the canal was built.

The drainage commission subsequently pleaded in bar of plaintiff's action the prescription of one year, averring that the work of the drainage commission done by the National Contracting Company, complained of by plaintiff, was completed in 1898, more than two years before the present action was brought.

An effort was made by the defendants to have the question of prescription taken up separately from and prior to the hearing upon the merits; but the court, over their objection, refused to do this, and they reserved a bill of exceptions. The case was tried upon the merits. The district court rendered judgment sustaining the plea of prescription filed by the defendants, and rejected plaintiff's demand.

He applied unsuccessfully for a new trial. In his application he averred: That the judgment was contrary to the law and the evidence. That it was contrary to evidence, in this: That the evidence of the first witness testifying on behalf of the exceptions proved that the damages to the building were caused by the works complained of, and first manifested their existence during the excavation made by defendants. That although the act complained of in the case, and giving rise to the damage suffered, was committed more than two years before the filing of the suit, the evidence showed conclusively that the damage from that time was continuous, and of a nature so to be the cause operating the same; i. e. the disintegration of the stability of the foundations of the building, and the consequent loss of its integrity, set in motion that condition of gradual sinking of the building, causing continuous and successive items of damages to the same, rendering the same more insecure and dangerous until May, 1901, when he was notified by the city authorities that the building had been condemned and should be demolished. That the testimony showed that the damage was continuous and increasing up to date of trial. That he had vainly applied for relief to the defendant at various times during that interval, as soon as notified of the fact that his building had been condemned, and within a month of said notice had instituted suit for damages up to that time, and for the expenses consequent upon complying with the requirements of the city authorities.

That the damage had been incessant and continuous, though slow in its manifestations, was shown by the report of Fitzner, dated April 17, 1899, and his later report, dated April 20, 1901, and the various amounts of expenditures shown to have been incurred by plaintiff during the years 1899, 1900, and 1901, and moreover by the repairs done by the defendant's agent in filling up the first cracks, which were shown to have reopened. That prescription begins to run from the time damages are sustained, and not from

the time the act complained of was committed, and the prescription in this case could not begin to run from the wrongful act, further than the amount of damages done by the continuous existence of the cause, if the same could not have been ascertained, and it was thus alleged and proved.

Plaintiff appealed.

## Opinion.

The question of prescription was so closely connected with the facts of the case that it was properly referred to the merits, to be disposed of on the trial of the merits.

A reference to plaintiff's petition shows that he charges defendant with reckless and negligent conduct in constructing a drainage canal—a trench of great width and depth—along St. Louis street, in close proximity to the foundations and walls of his building, and failing in so doing to take any of the precautions needful and necessary to secure his property from such dangerous work.

The canal in question was constructed as a public work by the drainage commission, by legal authority, in one of the public streets of the city of New Orleans, in aid of the public health, and in the exercise of the police power delegated to it, and the power of eminent domain was not called into exercise. Plaintiff's action is presented to us as one in tort, for redress for the direct proximate results of negligence and want of proper care, where the operating cause of injury is not set out as a continuing one, giving rise to successive damages from time to time from this continued existence, but as an original wrongful injury, which took place in November, 1898, and at that time and per se gave rise therefrom to a damage alleged to have steadily progressed forward; in other words, that the cause of the injury arose, produced injury, and ceased, but the resulting damages were progressive, and continued forward steadily until the suit was brought.

The plaintiff claims that under such circumstances, prescription did not begin to run for any part of the damage received until after the extent of the damages incurred had been fully ascertained. The article of the Civil Code on that subject does not support that contention. It declares, and the authorities under the article declare, that prescription runs from the time the damage is sustained. Civ. Code, art. 3537; De Lizardi v. New Orleans Banking Co., 25 La. Ann. 416; Hotard v. Texas & P. Ry. Co., 36 La. Ann. 450; Brown v. Clingman, 47 La. Ann. 26, 16 South. 564. Plaintiff's own pleadings show that the damage which he claims commenced contemporaneously with the building of the canal, and that the work in front of the premises was completed in the month of November, 1898. The present action was filed 26th June, 1901.

Assuming, for the purposes of this case, that defendant was in fact and in law responsible for the damage to plaintiff's building, he does not show what part of that damage was sustained after the period fixed for prescription. Where a wrongful act gives rise to immediate damage, the law directs that an action for redress must be brought within a year of that date.

That date is to be taken as the initial point for the one year's prescription. If an action is brought at a period later than a year from that date, the plaintiff must allege and show the state of facts which justified him in his postponement in bringing the action (Schlenker v. Taliaferro, 20 La. Ann. 568), when he has himself been in possession of the thing claimed to have been damaged, and in position to know better than any one else whether the damage was in fact of the progressive character which he alleged it to have been, and to know precisely when it occurred. It would be an extremely unreasonable rule, where a party alleging that a certain act carried with it an immediate, "commencing" damage to him, postpones bringing suit for damages received from that act until several years after the commission of the act, to exact that the party who committed the act, who had never had control of or been in possession of the thing damaged, should be held to show affirmatively precisely when each successive damage occurred, and, failing so to do, should be held bound for the same. The rule is that "the burden of proof is on the party who has to support his case by proof of a fact of which he is most cognizant." Rugely, Blair & Co. v. Gill, 15 La. Ann. 509; Bouman v. McElroy, 15 La. Ann. 664. Where one of the parties to a suit has

more means of knowledge concerning a matter to be proved than the other, the onus is on him.

This case differs from that of De Lizardi v. Canal Bank, 25 La. Ann. 416, in the important fact that in that case the damage claimed occurred while the thing damaged was under the control of and in the possession of the party committing the damage, while in the case at bar, if any new damages were sustained, beyond one year, it was when the owner himself was in possession. We think the judgment of the District Court correct, and it is hereby affirmed.