STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-730

GLENN BERNARD AND RANDY BERNARD

VERSUS

CITY OF MARKSVILLE

**********
APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, DOCKET NO. 2012-7571
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
J. David Painter, Judges.

AFFIRMED.

Chad P. Guillot
122 East Mark Street
P.O. Drawer 158
Marksville, LA 71351
(318) 253-6656
**ATTORNEYS FOR PLAINTIFFS/APPELLANTS**
    Glenn Bernard and Randy Bernard

Derrick M. Whittington
Whittington Law Firm
339 Moreau St., Suite A
P.O. Box 127
Marksville, LA 71351
(337) 253-5852
**ATTORNEY FOR DEFENDANTS/APPELLEES**
    City of Marksville

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

In 2004, Plaintiff, Glenn Bernard, purchased a tract of property adjacent to his residence from Defendant, the City of Marksville (hereafter the City). The purchased property was also bordered by Laurel Street, which is maintained by the City. At the time of the purchase, a twelve-inch culvert ran underneath Laurel Street and drained onto the purchased property. Plaintiff acknowledged the presence of this culvert constituted an apparent servitude on the property in question. The culvert was used to drain rainwater from City ditches and neighboring property. Plaintiff maintained his property suffered no damages as a result of the twelve-inch culvert.

According to Plaintiff, "[s]ometime during the year 2005," the City replaced the existing twelve-inch culvert with a thirty-inch culvert. According to Plaintiff, this replacement greatly increased the flow and volume of water running onto his property. Due to the influx of additional water, the ground became consistently muddy and soft, preventing Plaintiff from maintaining and enjoying his property under the same conditions existing prior to the installation of the larger culvert. Plaintiff also alleged a ditch formed on his property, from which shrubbery began growing.

On January 27, 2012, Plaintiffs filed a "Petition to Restore Peaceful Possession, for Injunctive Relief Under Ordinary Process, and for Damages" against the City.[1] Damages were requested for "property damages" and "mental anguish and anxiety." Plaintiffs also requested an injunction issue "ordering CITY OF MARKSVILLE to remove the thirty inch culvert and reroute the water damage to a location away from [Plaintiffs'] property."

---

[1] Along with Glenn Bernard, the petition also named Randy Bernard as a plaintiff.

2

On August 19, 2013, the City filed a peremptory exception of prescription alleging that Plaintiffs' claims had prescribed because suit was not filed within one year from the operating cause of their injury. The exception was set for a contradictory hearing.

After the hearing on the exception and the submission of briefs, the trial court granted the City's exception of prescription. The trial court concluded the prescriptive period had run in this matter because Plaintiffs had known of the operating cause of the alleged damages/injuries (the installation of the thirty-inch culvert) for several years prior to suit being filed. The trial court also determined the facts of this case did not present a continuing tort case, reasoning the Plaintiffs were complaining of the ill effects of a single event. Plaintiffs now appeal the judgment of the trial court granting the exception of prescription.

**ANALYSIS**

Plaintiffs' petition, which was filed on January 27, 2012, alleges "at the time of the purchase of the property in question, there was located on the property a drainage culvert twelve inches in diameter that [the City] used for the drainage of water." The petition then alleges "approximately five years ago, [the City] installed a thirty inch culvert in place of the twelve inch culvert, in violation of Louisiana law. . ." The petition contended "[a]s a result of defendant's actions, [Plaintiffs are] unable to have the free and unfettered use and enjoyment of the property. . ." and have suffered damages to their property and persons.

Louisiana law provides the one-year liberative prescriptive period for delictual actions begins to run from the day injury or damage is sustained. La.Civ.Code art. 3492. If the damage complained of is to immovable property, prescription begins to run from the day the owner "acquired, or should have acquired, knowledge of the damage." La.Civ.Code art. 3493. A review of Plaintiffs' petition reveals it asserts the installation of the thirty inch culvert was

3

the operating cause of the alleged injuries and/or damages suffered. The petition, filed on January 27, 2012, asserts this act occurred "approximately five years ago." Thus, Plaintiffs' action is prescribed on the face of the pleadings of the petition. Ordinarily, the party urging prescription bears the burden of proof at trial of the exception; however, if the petition is prescribed on its face, the burden shifts to the plaintiff to show the action is not prescribed. *Cichirillo v. Avondale Indus., Inc.*, 04-2894, 04-2918 (La. 11/29/05), 917 So.2d 424; *Dugas v. Bayou Teche Water Works*, 10-1211 (La.App. 3 Cir. 4/6/11), 61 So.3d 826.

Recognizing these legal precepts, Plaintiffs argue on appeal that the tort sued upon is a continuous tort and prescription begins to run only when the wrongful conduct ceases. The City notes the petition did not specifically plead that Plaintiffs were the victims of a continuous tort. However, that issue was discussed at the hearing, with the trial court ultimately concluding no continuous tort existed under the facts of this case. After a review of the record and the applicable jurisprudence, we agree.

The Louisiana Supreme Court in *Crump v. Sabine River Authority*, 98-2326, pp. 9-10 (La. 6/29/99), 737 So.2d 720, 726, discussed the theory of continuing tort:

> As previously noted by this Court, the theory of continuing tort has its roots in property damage cases and requires that the operating cause of the injury be a continuous one which results in continuous damages. *Bustamento v. Tucker*, 607 So.2d 532, 543 n. 8 (La. 1992); *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So.2d 531, 533 (La.1982). Professor Yiannopoulos, in his treatise on Louisiana predial servitudes clarified this requirement as it relates to prescription as follows:
>
>> [A] distinction is made between continuous and discontinuous causes of injury and resulting damage. When the *operating cause of the injury* is 'not a continuous one of daily occurrence', there is a multiplicity of causes of action and of corresponding prescriptive periods. Prescription is completed as to each injury, and the action is barred upon the lapse of one year from the date in which the plaintiff acquired, or should

4

have acquired, knowledge of the damage. . . . [This is to be distinguished from the situation where] the '*operating cause of the injury* is a continuous one, giving rise to successive damages from day to day. . . .'

A.N. Yiannopoulos, Predial Servitudes, § 63 (1983). (emphasis added).

In this latter case discussed by Professor Yiannopoulos, where the operating cause of injury is a continuous one and gives rise to successive damages, prescription dates from the cessation of the wrongful conduct causing the damage. *South Central Bell*, 418 So.2d at 533. However, in cases where property has been injured or damaged, and the continuing tort theory is inapplicable, either because the operating cause of the injury is discontinuous or because the damages are not successive, prescription runs from the date that knowledge of such damage was apparent or should have been apparent to the injured party. La.Civ.Code Ann. art. 3493 (West 1994); *South Central Bell*, 418 So.2d at 532; *Dean v. Hercules, Inc.*, 328 So.2d 69, 73 (La.1976).

In *Hogg v. Chevron USA, Inc.*, 09-2632, p. 16 (La. 7/6/10), 45 So.3d 991, 1003, the supreme court further explained the inquiry as to whether there is continuous tortious conduct "is essentially a conduct-based one, asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts." The *Hogg* court stated:

[C]ourts [look] to the alleged injury-producing conduct of the tortfeasors to determine whether that conduct was perpetuated through overt, persistent, and ongoing acts. Where the wrongful conduct was completed, but the plaintiff continued to experience injury in the absence of any further activity by the tortfeasor, no continuing tort was found.

*Id.*, 45 So.3d at 1005.

In the present case, there is no dispute that the operating cause of the damages claimed in the petition was the installation of the thirty-inch culvert. The petition does not claim there have been continual or ongoing unlawful acts on the part of the City subsequent to the installation of the thirty-inch culvert or that there was any failure to act or remediate the damages on the City's part after being made aware of any problems. The continued presence of excess water on the property is simply the continuing ill effect from the original tortious act, installation of the

5

larger culvert. This is similar to what the supreme court found in *Hogg* (no continuing tort found where "the wrongful act was completed, but the plaintiff continued to experience injury in the absence of any further activity by the tortfeasor) and *Crump* (no continuing tort found where the wrongful act of the tortfeasor, the digging of a canal some twenty years prior, was not followed by any further unlawful acts).

Plaintiffs cite *Estate of Patout v. City of New Iberia*, 01-151 (La.App. 3 Cir. 4/3/02), 813 So.2d 1248, *writ denied*, 02-1172, 02-1231 (La.6/21/02), 819 So.2d 335, 336, as support that the facts in the present case constitute a continuing tort. In *Patout*, the plaintiffs, private landowners who owned property adjacent to a city-operated landfill, sued the city for damages resulting when garbage was pushed onto their property. A panel of this court held that the *continued presence* of garbage on the plaintiffs' property constituted a continuing trespass and that prescription would not begin to run until the garbage was removed. *Patout*, 813 So.2d at 1250. We find *Patout* is distinguishable, in that this court determined the failure to remove the garbage was the operating cause of the injury, not the placing of the garbage on the property, particularly given the fact the city in *Patout*, "[o]n numerous occasions, . . . acknowledged its wrongful conduct and informed the landowners that the garbage would be removed." *Id.*, at 1250. In the instant case, Plaintiffs' petition does not allege any such acknowledgment on the City's part or any lack of action on its part. Moreover, as the City notes, Plaintiffs have acknowledged the water did not remain constantly on their property.

We also note with interest this court's decision in *LeJeune Brothers, Inc. v. Goodrich Petroleum, Co., L.L.C.*, 06-1557 (La.App. 3 Cir. 11/28/07), 981 So.2d 23, *writ denied*, 08-298 (La. 4/4/08), 978 So.2d 327, wherein we rejected a landowner's argument that the failure to remove oilfield exploration and production waste wrongfully deposited on his property constituted a continuing

6

tort. It was determined that the operating cause of damage was the disposal of waste into the property, not the failure to remove it. In reaching this conclusion, we noted the following reasoning from *Crump*, 737 So.2d at 727-728:

> In the instant case, the plaintiff similarly argues that the mere existence of the canal is the operating cause of daily injury because the effect of its presence is the continuous diversion of the flow of water away from the ox-bow. Relying on our prior decision in *Griffin [v. Drainage Commission of New Orleans*, 110 La. 840, 34 So. 799 (1903)], however, we find that the actual digging of the canal was the operating cause of the injury. The continued presence of the canal and the consequent diversion of water from the ox-bow are simply the continuing ill effects arising from a single tortious act.

In *LeJeune*, *Hogg* and *Crump*, the courts looked to the alleged injury-producing conduct of the tortfeasors to determine whether that conduct was perpetuated through overt, persistent, and ongoing acts. Where the wrongful conduct was *completed*, but the plaintiff continued to experience injury in *the absence of any further activity by the tortfeasor*, no continuing tort was found. We find the same result applies in the present case, and affirm the trial court's grant of the exception of prescription.

We also find no merit in Plaintiffs' alternative argument that even if we affirm the grant of the exception of prescription, we "should still reverse that portion of the judgment dismissing all causes of action against the City," and allow for the recovery of damages for any injuries that have occurred "since suit has been filed." Such an interpretation is contrary to the purpose of prescriptive statutes and is not supported by the law.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Plaintiffs/Appellants.

**AFFIRMED.**