# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 14-1310
### consolidated with
### 14-1311, 14-1312, 14-1313, and 14-1314

## GLORIA M. NED, INDIVIDUALLY, AND ON BEHALF OF JESSIE JANUARY AND JACQUELINE JANUARY

## VERSUS

## UNION PACIFIC CORPORATION, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2003-1100
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, James T. Genovese, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**J. Arthur Smith, III**
**Smith Law Firm**
**830 North Street**
**Baton Rouge, Louisiana  70802**
**(225) 383-7716**
**Counsel for Plaintiffs/Appellants:**
**        Gloria M. Ned, et al.**

**Leonard Knapp**
**Attorney at Law**
**Post Office Box 1665**
**Lake Charles, Louisiana  70602**
**(337) 439-1700**
**Counsel for Plaintiffs/Appellants:**
**        Gloria M. Ned, et al.**

**Brian Crawford**
**Crawford & Ogg**
**Post Office Box 14600**
**Monroe, Louisiana  71207**
**(318) 325-3200**
**Counsel for Plaintiffs/Appellants:**
**        Gloria M. Ned, et al.**

**David A. Fraser**
**Pamela L. Courtney**
**Fraser, Wheeler & Bergstedt, L.L.P.**
**Post Office Box 4886**
**Lake Charles, Louisiana 70606**
**(337) 478-8595**
**Counsel for Defendants/Appellees:**
**        Union Pacific Corporation**
**        Dallas Stutes**

**H. Alston Johnson, III**
**Steven J. Levine**
**Kevin W. Welsh**
**Phelps Dunbar LLP**
**Post Office Box 4412**
**Baton Rouge, Louisiana 70821-4412**
**(225) 346-0285**
**Counsel for Defendants/Appellees:**
**        Union Pacific Corporation**
**        Dallas Stutes**

**Merrick Walton**
**Attorney at Law**
**3515 Rice Boulevard**
**Houston, Texas 77005**
**(713) 665-8464**
**Counsel for Defendants/Appellees:**
**        Union Pacific Corporation**
**        Dallas Stutes**

**William B. Monk**
**Allyson E. Champagne**
**Kathleen T. Deanda**
**Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.**
**Post Office Box 2900**
**Lake Charles, Louisiana 70602**
**(337) 436-9491**
**Counsel for Defendants/Appellees:**
     **PPG Industries, Inc.**
     **A. L. Greathouse**
     **Tommy G. Brown**
     **W. J. Peard**

**KEATY, Judge.**

Plaintiffs[1] appeal the trial court's granting of a partial motion for summary judgment in favor of Defendants, Union Pacific Corporation, Union Pacific Railroad Corporation (Union Pacific), PPG Industries, Inc. (PPG), W. J. Peard, A. L. Greathouse, Tommy G. Brown, and Dallas Stutes. For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

In this toxic tort matter, residents of the Fisherville neighborhood in Lake Charles, Louisiana, which was located near a railroad yard wherein a hazardous chemical spill occurred, filed a negligence suit against the railroad owner and others. The chemical spill occurred on April 20, 1983, when a railcar carrying at least 11,000 gallons of perchloroethylene (PCE) released this toxic chemical through an open valve while parked at the Lake Charles Rail Yard. Southern Pacific Transportation Company (Southern Pacific), the predecessor-in-interest of Union Pacific, owned the rail yard and railcar, whereas PPG owned the PCE. Southern Pacific and PPG cleaned the area where the spill occurred, allegedly eliminating all PCE from the ground surface level by mid-July 1983.

After July 1983, approximately 1,150 gallons of PCE remained underground. Cleaning and remediation efforts continued by way of groundwater monitoring, treatment and extraction of impacted groundwater, maintenance, and installation of monitored wells at the release site and in areas north and south. Between 1996 and 1998, additional monitoring wells were installed on railroad property and in the Fisherville neighborhood.

---

[1] Since this appeal was filed on behalf of eighty-five Plaintiffs, and for brevity, Plaintiffs' names can be found in the trial court's written judgment dated July 1, 2014.

As a result of the leak, numerous lawsuits were filed. Specifically, on October 5, 1998, Gwendolyn Guillory and other Fisherville residents filed suit in *Guillory v. Union Pacific Corp.*, 01-960 (La.App. 3 Cir. 5/15/02), 817 So.2d 1234, *writ denied*, 02-2094 (La. 11/1/02), 828 So.2d 575. In *Guillory*, the trial court denied the Fisherville plaintiffs' motion for class certification. *Id.* On appeal, we reversed and remanded, finding that the record supported all of the requirements for class certification under La.Code Civ.P. art. 591. *Id.* In the instant matter, through its appellate brief, Defendants assert that the *Guillory* class action was settled in 2007, subject to a fairness hearing wherein class representatives acknowledged that they could not offer credible evidence of actual injuries caused by the remaining underground PCE.

This litigation stems from five similar individual civil actions filed on March 3, 2003, in the Calcasieu Parish trial court. The suits have been consolidated, forming the proceeding as it stands today. In its appellate brief, Defendants contend that the consolidated suits involve 360 Plaintiffs who allegedly opted out of the *Guillory* class action. Defendants allege that approximately 100 Plaintiffs of the original 360 were dismissed for either or both of the following reasons: (1) res judicata resulting from settling and signing releases in other suits or (2) as a sanction resulting from the failure to comply with orders requiring discovery. Defendants contend that none have appealed those dismissals.

In response to Plaintiffs' suit, Defendants filed a peremptory exception of prescription. Hearings on the exception were held in March and September 2009. On April 1, 2010, the trial court issued written reasons for denying Defendants' exception based upon its finding that Plaintiffs "have the right to continue with their action through application of the continuing tort theory." The trial court's

2

ruling was reduced to written judgment dated April 19, 2010. Defendants filed a Motion for New Trial and/or Reconsideration or Clarification of the trial court's denial of Defendants' peremptory exception of prescription, which was denied. Defendants sought supervisory writs from this court and the supreme court, which were also denied.

Defendants filed a partial motion for summary judgment on April 28, 2014. It sought dismissal of two groups of Plaintiffs listed in its exhibits based upon prescription and Plaintiffs' alleged failure to provide discovery responses. After a hearing on June 18, 2014, the trial court granted Defendants' partial motion for summary judgment, dismissing those two groups of Plaintiffs.

Plaintiffs appeal the trial court's granting of Defendants' partial motion for summary judgment, alleging the following four assignments of error:

(1) The trial court erred in dismissing seventy-nine Plaintiffs' claims on the grounds that they had actual and/or constructive knowledge of their onset of symptoms more than one year prior to filing suit when the trial court previously determined that Plaintiffs established a basis for concluding that continuous tortious conduct occurred.

(2) The trial court erred in sustaining Defendants' prescriptive defense when there lacked competent evidence that they had actual knowledge of the cause of their injuries and that, therefore, Plaintiffs' claims have not prescribed under the federally required commencement date pursuant to 42 U.S.C. § 9658 (a)(1) for actions brought under state law for personal injury damages arising from exposure to hazardous substances.

(3) The trial court erred and/or abused its discretion in admitting into evidence the affidavit of two employees of one of the law firms representing Defendants, even though it failed to comply with the requirements set forth in La.Code Civ.P. art. 967.

(4) The trial court erred and/or abused its discretion in excluding as untimely the affidavit of Plaintiffs' expert, Dr. Paul H. Templet, which was dated, filed, and served on June 9, 2014.

## STANDARD OF REVIEW

In *Whitbeck v. Champage*, 14-245, p. 9 (La.App. 3 Cir. 10/1/14), 149 So.3d 372, 379, this court stated the following:

> Summary judgments are reviewed de novo, applying the same standard to the matter as that applied by the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La.7/5/94), 639 So.2d 730. Summary judgment is favored by law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

Thus, we will use the de novo standard of review in the instant matter.

## DISCUSSION

### I.  Actual or Constructive Notice

In their first assignment of error, Plaintiffs contend that the trial court erred in dismissing seventy-nine Plaintiffs' claims based on their actual and/or constructive knowledge of the onset of their symptoms more than one year prior to filing suit despite the trial court's previous ruling that they properly established a basis for concluding that continuous tortious conduct occurred. Plaintiffs allege that "the pivotal issue in this case is what role does notice play in a continuing tort case with regard to prescription." We find that Plaintiffs are mistaken as to the pivotal issue. According to the trial court's April 1, 2010 ruling on Defendants' peremptory exception of prescription, the issue is whether it correctly held that Plaintiffs could "continue with their action through the application of the continuing tort theory." Given the subsequent rulings in *Hogg v. Chevron USA, Inc.,* 09-2632, 09-2635 (La. 7/6/10), 45 So.3d 991; *Marin v. Exxon Mobil Corp.*, 09-2368, 09-2371 (La. 10/19/10), 48 So.3d 234; and *Bernard v. City of Marksville*,

14-730 (La.App. 3 Cir. 12/17/14), 154 So.3d 1246, Plaintiffs' reliance on the continuing tort doctrine is misplaced.

The continuing tort doctrine provides that "[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated." *S. Cent. Bell Tel. Co. v. Texaco, Inc.*, 418 So.2d 531, 533 (La.1982). "A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act." *Crump v. Sabine River Auth.*, 98-2326, p. 9 (La. 6/29/99), 737 So.2d 720, 728. When the tortious conduct is continuous and gives rise "to successive damages, prescription dates from cessation of the wrongful conduct causing the damage." *S. Cent. Bell Tel. Co.*, 418 So.2d at 533. In *South Central Bell Telephone Co.*, 418 So.2d 531, the supreme court held that the wrongful conduct causing the damage was the leaking underground storage tanks and that the cause of the damage abated when the offending tanks were removed and replaced.

Recent supreme court cases that were decided after the hearing on Defendants' partial motion for summary judgment under facts similar to the instant case have held the continuing tort theory inapplicable. In *Hogg*, 45 So.3d 991, the supreme court granted certiorari to determine whether the continued presence of gas on immovable property, resulting from leaking underground storage tanks located on neighboring property, constituted a continuing tort that suspended prescription. In resolving the issue, the supreme court looked to its analysis in *South Central Bell Telephone Co.*, 418 So.2d 531, and other cases wherein those courts looked to the injury-producing conduct to determine whether it was perpetuated through ongoing acts. *Hogg*, 45 So.3d 991. The supreme court noted that "[w]here the wrongful conduct was completed, but the plaintiff continued to

5

experience injury in the absence of any further activity by the tortfeasor, no continuing tort was found." *Id*. at 1005. In reversing the trial court's judgment denying the defendants' motion for summary judgment and finding that the plaintiffs' claims had prescribed, the supreme court held:

> Under the factual allegations of plaintiffs' petition, the trespass . . . is simply not a continuing one. The presence of gasoline on plaintiffs' property is the continuing effect of prior wrongful conduct which occurred on neighboring property. The plaintiffs' pleadings contain no allegation of leaking after 1996. In other words, there are no allegations of new conduct after the initial leakage ceased. . . . Because the operating cause of the injury—the damage-causing conduct—is not continuing, there is no continuing tort. As a result, the theory of continuous trespass/continuous tort cannot operate to suspend the running of prescription.

*Id*. at 1006 (footnotes omitted).

The supreme court also found the continuing tort theory inapplicable two months later in *Marin,* 48 So.3d 234, wherein the defendants disposed of oilfield wastes in unlined earthen pits, resulting in the contamination of the neighboring plaintiffs' property. The plaintiffs argued that the defendants' continuing migration of pollution was ongoing. *Id*. They alleged that their actions were not prescribed as the defendants' pollution of their land constituted a continuing tort until the contamination was removed, regardless of the plaintiffs' knowledge of the damage. *Id*. The *Marin* court noted the factual difference between it and *Hogg*, 45 So.3d 991, in that "there was no evidence or argument [in *Hogg*] that gasoline continued to leak after the tanks were replaced[;] whereas here, plaintiffs assert that" evidence shows that the defendants' pollution continues migrating, causing successive damage, and causing ongoing deterioration of the plaintiffs' property. *Marin*, 48 So.3d at 254. In finding that a continuing tort failed to exist, the supreme court held:

6

The operating cause of plaintiffs' injury was still the actual disposal or storage of the oilfield waste in unlined pits on plaintiffs' property. When the pits were closed, the conduct ceased. Simply because the contaminants may have continued to dissolve into, or move with, the groundwater with the passage of time does not turn this into a continuing tort.

*Id*. (citations omitted).

We used the foregoing supreme court's analysis in *Bernard,* 154 So.3d 1246, wherein the plaintiff landowner filed a petition for damages against the defendant city. The defendant replaced an existing twelve-inch culvert with a thirty-inch culvert that allegedly increased the flow and volume of water running onto the plaintiff's property. *Id*. After the trial court granted the defendant's exception of prescription, the plaintiff appealed. *Id*. On appeal, we affirmed the trial court's judgment and held:

In the present case, there is no dispute that the operating cause of the damages claimed in the petition was the installation of the thirty-inch culvert. The petition does not claim there have been continual or ongoing unlawful acts on the part of the City subsequent to the installation of the thirty-inch culvert or that there was any failure to act or remediate the damages on the City's part after being made aware of any problems. The continued presence of excess water on the property is simply the continuing ill effect from the original tortious act, installation of the larger culvert.

*Id*. at 1249.

Utilizing the foregoing jurisprudence and analysis, we look to Plaintiffs' petition which alleges that "PCE . . . ha[s] seeped into the subterranean soils and spread throughout the area surrounding the facility." Their petition further states that Defendants "have allowed the migration of . . . PCE, from the facility and into the surrounding community over the course of approximately 15 years." Despite those allegations, we find that the alleged injury-causing conduct was the one-time release of PCE, which occurred on April 20, 1983. Accordingly, Plaintiffs'

7

reliance on the trial court's April 1, 2010 ruling that they "have the right to continue with their action through application of the continuing tort theory" is without merit.

Since Plaintiffs' reliance upon the continuing tort theory is misplaced, we next determine whether the trial court's dismissal of Plaintiffs' claims based upon liberative prescription was correct. The applicable prescriptive period is governed by La.Civ.Code art. 3493, which provides, "[w]hen damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." Actual or constructive knowledge triggers the commencement of prescription. *Hogg*, 45 So.3d 991. Constructive knowledge is defined "as whatever notice is enough to excite attention and put the injured party on guard or call for inquiry." *Id*. at 997. In determining whether an injured party had constructive knowledge sufficient to begin the running of prescription, the court must consider "the reasonableness of the injured party's action or inaction in light of the surrounding circumstances." *Id*. at 998. A plaintiff is "'deemed to know that which he could have learned from reasonable diligence.'" *Touchet v. Baker Hughes, Inc.*, 98-749, p. 6 (La.App. 3 Cir. 2/3/99), 737 So.2d 821, 825 (quoting *La Plaque Corp. v. Chevron U.S.A. Inc.*, 93-1597, p. 8 (La.App. 4 Cir. 5/26/94), 638 So.2d 354, 358, *writ denied*, 94-2125 (La. 11/11/94), 644 So.2d 395). In cases such as this, the "onset of symptoms never before suffered by the plaintiff should have provoked an inquiry into the cause[.]" *Artholee v. Trinity Universal Ins. Co. of Kansas*, 08-1053, p. 4 (La.App. 3 Cir. 2/4/09), 3 So.3d 611, 614. In this case, Defendants are required "[t]o prove, based solely on documentary evidence and without the benefit of testimony at a hearing, that there is no genuine material

8

factual issue in dispute regarding the date upon which the plaintiffs acquired actual or constructive knowledge of the damage sufficient to commence the running of prescription." *Hogg*, 45 So.3d at 998.

Defendants' motion for summary judgment asserts that Plaintiffs acquired knowledge of the correlation between the leak and their onset of symptoms long before 2003. In support, Defendants offered into the record an affidavit prepared by Wendy Daniels and Nancy Brown, two employees of a law firm representing Defendants, attaching to it Exhibit A(1). Exhibit A(1) is a table consisting of summaries taken from seventy-nine Plaintiffs' responses to Defendants' Interrogatory No. 9, which asks for the date Plaintiffs first experienced symptoms arising from the 1983 PCE leak.[2] The summaries show that they experienced onset of symptoms immediately following the 1983 leak or soon after, with the exception of one Plaintiff who stated that she experienced symptoms "since 1990." We find that these documents show that Plaintiffs had actual knowledge, at least by 1990, that their property was contaminated by the PCE from the 1983 railcar leak and that this knowledge of the cause, source, and existence of the contaminants was sufficient to commence the running of prescription.

We further find that Plaintiffs had constructive knowledge of the PCE leak sufficient to begin the running of prescription long before 2003. They had to have

---

[2] Interrogatory No. 9 provides:

Do you contend you suffered any physical injury, disease, condition or symptom as a result of your exposure to PCE from the April 1983 railcar spill? If yes,

a.      Describe separately and in detail each injury, disease, condition or symptom you claim as a result of exposure to PCE from the April 1983 railcar spill;

b.      State the date on which you first suffered or observed each injury, disease, condition or symptom and state whether it still exists.

9

been put on notice by seeing the visible remediation efforts which took place soon after the leak. These remediation efforts continued for years and included groundwater monitoring and installation of monitored wells at the release site and in areas north and south. Additional monitoring wells were also installed on railroad property and in the Fisherville neighborhood.

In granting Defendants' partial motion for summary judgment with respect to Plaintiffs that are listed in Exhibit A(1), the trial court orally ruled:

> I agree with the defendants that based on what has transpired before the date that we have presented here at this time that there have been adequate time for the discovery that I have imposed on the parties, and relation to the responses that have been given by the plaintiffs they're going to live by them at this time. That Motion for Summary Judgment is granted.

For the foregoing reasons, we find that the trial court was not manifestly erroneous in dismissing the seventy-nine Plaintiffs that are listed in Exhibit A(1).

Defendants also offered into the record Exhibit D, which was attached to the affidavit and listed seven Plaintiffs who allegedly failed to respond to the trial court's previous order regarding their responses to Defendants' discovery requests. The July 28, 2008 trial court order, which was read aloud by Defendants' counsel at the hearing on its motion for summary judgment, stated that Plaintiffs who failed to provide discovery responses within thirty days, i.e., by August 18, 2008, were subject to dismissal.

In response, Plaintiffs' counsel stated at the hearing that although one of the Plaintiffs responded, the remaining six Plaintiffs listed in Exhibit D either failed to respond or were not their clients. The trial court subsequently granted Defendants' motion for summary judgment with respect to six of the seven Plaintiffs that are listed in Exhibit D. Since Plaintiffs' counsel and Defendants' counsel agreed that

those six Plaintiffs failed to respond to discovery, we find that the trial court was not manifestly erroneous in dismissing those Plaintiffs.

## II. Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)

In their second assignment of error, Plaintiffs contend that the trial court erred in sustaining Defendants' prescriptive defense when there was a lack of competent evidence that Plaintiffs had actual knowledge of the cause of their injuries. Therefore, Plaintiffs allege that pursuant to the CERCLA, their claims have not prescribed under the federally required commencement date for actions brought under state law for personal injury damages arising from exposure to hazardous substances. Plaintiffs contend that pursuant to CERCLA's commencement date, prescription begins to run on the day that they knew, or reasonably should have known, that the leak caused injury or damage.

In support, Plaintiffs cite CERCLA's provision found at 42 U.S.C. § 9658, which provides:

(a) State statutes of limitations for hazardous substance cases

(1) Exception to State statutes

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

Plaintiffs further cite 42 U.S.C. § 9658(b)(4)(A), which provides:

[T]he term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of

11

this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

CERCLA's legislative history shows that Congress' intent in enacting 42 U.S.C. § 9658 was "to preempt a state statute of limitations that deprives a plaintiff who suffers a long-latency disease caused by the release of a hazardous substance of his cause of action[.]" *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co., Inc.*, 419 F.3d 355, 362 (5th Cir. 2005). This federally required commencement date was explained by the United States Supreme Court in *CTS Corp. v. Waldburger*, 134 S.Ct. 2175, 2180 (2014), as follows: "Section 9658 adopts what is known as the discovery rule. Under this framework, statutes of limitations in covered actions begin to run when a plaintiff discovers, or reasonably should have discovered, that the harm in question was caused by the contaminant."

The commencement date of prescription provided in 42 U.S.C. § 9658 mirrors Louisiana's commencement date, which was explained by this court in *Picard v. Vermilion Parish School Board*, 00-1222, p. 3 (La.App. 3 Cir. 4/4/01), 783 So.2d 590, 594, *writ denied*, 01-1346 (La. 6/22/01), 794 So.2d 794 (quoting *Simmons v. Templeton,* 97-2349, 98-43, pp. 3-4 (La.App. 4 Cir. 11/10/98), 723 So.2d 1009, 1012, *writs denied*, 98-3050, 98-3060 (La. 2/5/99), 783 So.2d 4, 783 So.2d 5), as follows: "[P]rescription does not begin to run until 'a plaintiff either knew or should have known of a cause of action[.]'"

A reasonable diligence standard similar to the standard found in Louisiana's contra non valentum theory can also be found in 42 U.S.C. § 9658. In *Burlington Northern & Santa Fe Railway Co.*, 419 F.3d at 362 (quoting *Computer Associates International, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)) (footnote omitted), the Fifth Circuit stated: "[Section] 9658 engrafts a discovery rule on

state statutes of limitations, deferring the 'accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action.'" Similarly, in *Touchet,* 737 So.2d at 825 (quoting *La Plaque Corp.*, 638 So.2d at 358), we stated: "[A] plaintiff is 'deemed to know that which he could have learned from reasonable diligence.'"

In this case, Plaintiffs have not shown any inconsistencies between the commencement of federal and state prescriptive periods that would warrant federal preemption of state law. Since Plaintiffs asserted preemption in the instant matter, they bear "the burden of persuasion." *Barnes ex rel. Estate of Barnes v. Koppers, Inc.*, 534 F.3d 357, 362 (5th Cir. 2008). In order to discharge their burden, Plaintiffs must show that they neither knew nor should have known that their cause of action could be associated with the 1983 leak in the exercise of reasonable diligence. *See CTS Corp.*, 134 S.Ct. 2175 and *Picard*, 783 So.2d 590. In this case, Plaintiffs' discovery responses show that their symptoms began soon after the 1983 chemical spill. There was also extensive media coverage and remediation efforts which were on display to the public. Plaintiffs are, therefore, unable to meet their burden of persuasion. Accordingly, Plaintiffs' reliance on federal preemption law is without merit, and the trial court was not manifestly erroneous in this regard.

**III.  Affidavit**

In their third assignment of error, Plaintiffs contend that the trial court erred and/or abused its discretion in admitting into evidence Daniels' and Brown's affidavit even though it failed to comply with the personal knowledge requirements set forth in La.Code Civ.P. art. 967. Louisiana Code of Civil Procedure Article 967(A) provides that:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

We discussed the personal knowledge requirement in *Denbury Onshore, L.L.C. v. Pucheu*, 08-1210, p. 18 (La.App. 3 Cir. 3/11/09), 6 So.3d 386, 398 (quoting *Hibernia National Bank v. Rivera*, 07-962, pp. 8-9 (La.App. 5 Cir. 9/30/08), 996 So.2d 534, 539-40), as follows:

Personal knowledge means something the witness actually saw or heard, as distinguished from what he learned from some other person or source. The purpose of the requirement of "personal knowledge" is to limit the affidavit to facts which the affiant saw, heard, or perceived with his own senses. Portions of affidavits not based on personal knowledge of the affiant should not be considered by the trial court in deciding a motion for summary judgment.

Where business records are concerned, as in the present case, the courts have deemed La.C.C.P. art. 967 satisfied when the affiant is qualified to identify the business records as such. The affiant has not been required to show that he personally prepared the business records, or that he had direct, independent, first hand knowledge of the contents thereof.

The issue in *Denbury*, 6 So.3d 386, was whether the trial court erroneously admitted the affidavit of Denbury's employee, John McDaniel, which was filed in support of Denbury's motion for summary judgment. McDaniel's affidavit contained information compiled from other records prepared by other Denbury personnel such that the plaintiffs argued that it was inadmissible because it was not based on personal knowledge. *Id.* We concluded that McDaniel's affidavit failed to establish that it was based on personal knowledge as he did "not identify the

records from which he prepared the spreadsheets attached to his affidavit[] or explain that he is personally familiar with the records and why." *Id*. at 398. *Denbury*, therefore, requires either identification of the records or personal familiarity in order for an affidavit to be based on personal knowledge under La.Code Civ.P. art. 967.

In the present case, the affidavit states that the affiants "personally reviewed all discovery responses from [P]laintiffs and all other related items as part of compiling the tables itemized as Exhibits A(1), A(2), B, C and D." The identification of records requirement is met since the affiants stated that they obtained their information used to make their spreadsheets attached to their affidavit from Plaintiffs' discovery responses and other related items. The personal familiarity requirement is further met as the affiants stated that they "personally reviewed" the Plaintiffs' discovery responses and other related items. Affiants satisfied both requirements even though only satisfaction of one *Denbury* requirement is sufficient for a finding of personal knowledge under La.Code Civ.P. art. 967. Accordingly, Plaintiffs' assignment of error is without merit.

## IV.   Dr. Paul H. Templet's Affidavit

In their fourth assignment of error, Plaintiffs contend that the trial court erred and/or abused its discretion in excluding the affidavit of their expert, Dr. Paul H. Templet, which was dated, filed, and served on June 9, 2014, on the sole ground that the filing was untimely.

In its oral ruling, the trial court stated that its exclusion was based upon an earlier conference with the parties' counsel wherein it informed counsel that it would not accept anything filed after May 28. The trial court stated that although it "may not have issued an order pursuant to" the previous conference, it "thought

15

it was pretty clearly understood that we had some deadlines regarding filings in anticipation of today's hearing."

Pretrial conferences are governed by La.Code Civ.P. art. 1551, which provides that the trial court may, "in its discretion[,] direct the attorneys for the parties to appear before it for conferences to consider any of the following[,]" including "[t]he control and scheduling of discovery[.]" La.Code Civ.P. art. 1551(A)(6). "A trial court has wide discretion to provide for pretrial orders and to ensure that the terms of the order are enforced." *Succession of Harrell v. Erris-Omega Plantation*, *Inc.*, 12-696, p. 5 (La.App. 3 Cir. 12/5/12), 104 So.3d 751, 755, *writ denied*, 13-438 (La. 4/5/13) 110 So.3d 595.

Louisiana District Court Rule 9.9(c) (emphasis added) provides:

> A party who opposes an exception or motion shall concurrently furnish the trial judge and serve on all other parties an opposition memorandum at least eight calendar days before the scheduled hearing. The opposition memorandum shall be served on all other parties so that it is received by the other parties at least eight calendar days before the hearing, **unless the court sets a shorter time**.

In the instant case, Plaintiffs filed their report on June 9, 2014, which was at least eight calendar days before the scheduled hearing. By requiring the filing date to be May 28 rather than June 9, 2014, the trial court "set[] a shorter time" pursuant to La.Dist.Ct.R. 9.9. Although there is no order contained in the record providing for this shorter deadline, jurisprudence has held that such order is not necessary when "all counsel of record attended [a] pretrial conference." *Succession of Harrell*, 104 So.3d at 755. In this case, both parties' counsel agreed at the hearing on Defendants' partial motion for summary judgment that they attended a previous telephone conference with the trial court wherein it orally set this shorter deadline. Pursuant to the foregoing law and jurisprudence, the parties

were required to comply with this shorter, court-ordered deadline. Accordingly, Plaintiffs' assignment of error is without merit.

## DECREE

The trial court's judgment is affirmed. All costs of this appeal are assessed to Plaintiffs.

**AFFIRMED.**